# MAYER *v.* CITY OF CHICAGO

No. 70–5040.   Argued October 14, 1971—
Decided December 13, 1971

*Henry F. Field* argued the cause for appellant. With him on the briefs were *Thomas B. McNeill* and *Robert A. Burt.*

*Richard L. Curry* argued the cause for appellee. With him on the brief were *William R. Quinlan* and *Edmund Hatfield.*

*Vincent Bentivenga* and *Paul P. Biebel, Jr.,* filed a brief for the State's Attorney of Cook County, Illinois, as *amicus curiae* urging affirmance.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

A jury in the Circuit Court of Cook County, Illinois, convicted appellant on nonfelony charges of disorderly conduct and interference with a police officer in violation of ordinances of the city of Chicago. He was sentenced to a $250 fine on each offense; violation of each ordinance carried a maximum penalty of $500. Desiring to appeal, he petitioned the Circuit Court for a free transcript of the proceedings of his trial to support his grounds of appeal that the evidence was insufficient for conviction and that misconduct of the prosecutor denied him a fair trial.[1] The Circuit Court

---

[1] A court reporter was provided at appellant's trial pursuant to the State Court Reporters Act, Ill. Rev. Stat., c. 37, § 651 *et seq.* (1969). It was estimated that the cost of preparing a transcript would be $300. The record refers in some places to a two-day trial and in other places to a three-day trial.

Under Illinois law at the time of appellant's convictions an appeal lay as of right either to the Illinois Supreme Court or to the Illinois Appellate Court, depending upon the nature of the case or the contentions raised. See Constitution of Illinois 1870, Art. 6, §§ 5, 7. If a case was erroneously appealed to the wrong court, it was transferred to the proper court without any loss of rights. Illinois Supreme Court Rule 365, Ill. Rev. Stat., c. 110A, § 365 (1969). Of course, whether an appeal is discretionary or as of right does not

found that he was indigent, but denied his application, stating "that defendant was found guilty of ordinance violations and . . . rule 607 of the Supreme Court applies to felony cases." The reference was to Illinois Supreme Court Rule 607 (b), which in pertinent part provided: "In any case in which the defendant is convicted of a *felony,* he may petition the court in which he was convicted for a report of proceedings at his trial." [2] (Emphasis supplied.) Other Illinois Supreme

---

affect an indigent's right to a transcript, since "[i]ndigents must . . . have the same opportunities to invoke the discretion of the" court as those who can afford the costs. *Burns* v. *Ohio,* 360 U. S. 252, 258 (1959).

[2] The full text of Rule 607 (b), Ill. Rev. Stat., c. 110A, § 607 (b) (1969), was as follows:

"Report of Proceedings. In any case in which the defendant is convicted of a felony, he may petition the court in which he was convicted for a report of proceedings at his trial. If the conduct on which the felony case is based was also the basis for a juvenile proceeding which was dismissed so the felony case could proceed, the defendant may include in his petition a request for a report of proceedings in the juvenile proceeding. The petition shall be verified by the petitioner and shall state facts showing that he was at the time of his conviction, and is at the time of filing the petition, without financial means to pay for the report. If the judge who imposed sentence, or in his absence any other judge of the court, finds that the defendant is without financial means with which to obtain the report of proceedings at his trial, he shall order the court reporter to transcribe an original and copy of his notes. The original of the report shall be certified by the reporter and filed with the clerk of the trial court as provided below, and the copy shall be certified by the reporter and delivered to the defendant without charge. The reporter who prepares a report of proceedings pursuant to an order under this rule shall be paid the same fee for preparing the transcript as is provided by law for the compensation of reporters for preparing transcripts in other cases."

Following *Griffin* v. *Illinois,* 351 U. S. 12 (1956), the Illinois Legislature authorized free transcripts for indigents "[u]pon imposition of any sentence in a criminal case." See Ill. Ann. Stat., c. 38,

Court rules, Rules 323 (c) and 323 (d), provided for alternatives to a transcript in the form of a "Settled Statement" or an "Agreed Statement of Facts." [3] Without resorting to either alternative, appellant made a motion in the Illinois Supreme Court for an order that he be

---

§ 121-13 (a) and committee comments appended thereto (1964). However, under authority allowing the State Supreme Court, in effect, to amend code provisions governing criminal appeals, *id.*, § 121-1, the court promulgated Rule 607 (b) authorizing transcripts at state expense only for indigents convicted of a felony. The rule was amended effective July 1, 1971, to apply to "any case in which the defendant is convicted of an offense punishable by imprisonment for more than six months." 1971 Illinois Legislative Service, No. 5, p. 1703.

[3] These rules, Ill. Rev. Stat., c. 110A, § 323 (c) and (d) (1969), provided:

"(c) Procedure If No Verbatim Transcript Is Available. If no verbatim transcript of the evidence or proceedings is obtainable the appellant may prepare a proposed report of proceedings from the best available sources, including recollection. It shall be served within seven days after the notice of appeal is filed. Within 21 days after the notice of appeal is filed, any other party may serve proposed amendments or his proposed report of proceedings. Within seven days thereafter, the appellant shall, upon notice, present the proposed report or reports and any proposed amendments to the trial court for settlement and approval. The court, holding hearings if necessary, shall promptly settle, certify, and order filed an accurate report of proceedings.

"(d) Agreed Statement of Facts. The parties by written stipulation may agree upon a statement of the facts material to the controversy and file it in lieu of and within the time for filing a report of proceedings."

These rules were also amended effective July 1, 1971, but not in ways material to this case. See 1971 Illinois Legislative Service, No. 5, p. 1690. Despite the provision limiting use of a "Settled" statement to cases where no verbatim transcript is "available" or "obtainable," the procedure of subsection (c) evidently is permissible even though the court reporter's notes are available for transcription. See Tone, New Supreme Court Rule on Expeditious and Inexpensive Appeals, 53 Ill. B. J. 18, 20 (1964).

furnished a transcript of proceedings without cost. The Supreme Court denied the motion in an unreported order without filing an opinion. We noted probable jurisdiction of appellant's appeal challenging the constitutionality of the limitation of Rule 607 (b) to felony cases. 401 U. S. 906 (1971).

## I

*Griffin* v. *Illinois,* 351 U. S. 12 (1956), is the watershed of our transcript decisions. We held there that "[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." *Id.,* at 19. This holding rested on the "constitutional guaranties of due process and equal protection both [of which] call for procedures in criminal trials which allow no invidious discriminations between persons and different groups of persons." *Id.,* at 17. We said that "[p]lainly the ability to pay costs in advance bears no rational relationship to a defendant's guilt or innocence . . . ," *id.,* at 17–18, and concluded that "[t]here can be no equal justice where the kind of trial a man gets depends on the amount of money he has." *Id.,* at 19. Appellee city of Chicago urges that we re-examine *Griffin.* We decline to do so. For "it is now fundamental that, once established . . . avenues [of appellate review] must be kept free of unreasoned distinctions that can only impede open and equal access to the courts." *Rinaldi* v. *Yeager,* 384 U. S. 305, 310 (1966).[4] Therefore, "[i]n all cases the duty of the State

---

[4] Our decisions on the question of free transcripts for indigents include: *Wade* v. *Wilson,* 396 U. S. 282 (1970); *Williams* v. *Oklahoma City,* 395 U. S. 458 (1969); *Gardner* v. *California,* 393 U. S. 367 (1969); *Roberts* v. *LaVallee,* 389 U. S. 40 (1967); *Long* v. *District Court of Iowa,* 385 U. S. 192 (1966); *Draper* v. *Washington,* 372 U. S. 487 (1963); *Lane* v. *Brown,* 372 U. S. 477 (1963); *Coppedge* v. *United States,* 369 U. S. 438 (1962); and *Eskridge* v. *Washington Prison Bd.,* 357 U. S. 214 (1958).

is to provide the indigent as adequate and effective an appellate review as that given appellants with funds . . . ." *Draper* v. *Washington*, 372 U. S. 487, 496 (1963). In terms of a trial record, this means that the State must afford the indigent a " 'record of sufficient completeness' to permit proper consideration of [his] claims." *Id.*, at 499 (quoting *Coppedge* v. *United States*, 369 U. S. 438, 446 (1962)).

A "record of sufficient completeness" does not translate automatically into a complete verbatim transcript. We said in *Griffin* that a State "may find other means [than providing stenographic transcripts for] affording adequate and effective appellate review to indigent defendants." 351 U. S., at 20. We considered this more fully in *Draper* v. *Washington, supra,* at 495–496:

> "Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript. Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues. Even as to

this kind of issue, however, it is unnecessary to afford a record of the proceedings pertaining to an alleged failure of proof on a point which is irrelevant as a matter of law to the elements of the crime for which the defendant has been convicted. In the examples given, the fact that an appellant with funds may choose to waste his money by unnecessarily including in the record all of the transcript does not mean that the State must waste its funds by providing what is unnecessary for adequate appellate review."

We emphasize, however, that the State must provide a full verbatim record where that is necessary to assure the indigent as effective an appeal as would be available to the defendant with resources to pay his own way. Moreover, where the grounds of appeal, as in this case, make out a colorable need for a complete transcript, the burden is on the State to show that only a portion of the transcript or an "alternative" will suffice for an effective appeal on those grounds. This rationale underlies our statement in *Draper, supra,* at 498, that:

> "[T]he State could have endeavored to show that a narrative statement or only a portion of the transcript would be adequate and available for appellate consideration of petitioners' contentions. The trial judge would have complied with . . . the constitutional mandate . . . in limiting the grant accordingly on the basis of such a showing by the State." [5]

## II

The distinction between felony and nonfelony offenses drawn by Rule 607 (b) can no more satisfy the requirements of the Fourteenth Amendment than could the like

---

[5] See also *Gardner* v. *California,* 393 U. S., at 370 (noting no suggestion made of an adequate substitute for a full transcript); *Eskridge* v. *Washington Prison Bd.,* 357 U. S., at 215 (noting State's failure to show availability of trial notes).

distinction in the Wisconsin law, held invalid in *Groppi* v. *Wisconsin,* 400 U. S. 505 (1971), which permitted a change of venue in felony but not in misdemeanor trials. The size of the defendant's pocketbook bears no more relationship to his guilt or innocence in a nonfelony than in a felony case. The distinction drawn by Rule 607 (b) is, therefore, an "unreasoned distinction" proscribed by the Fourteenth Amendment. *Rinaldi* v. *Yeager, supra,* at 310. That conclusion follows directly from our decision in *Williams* v. *Oklahoma City,* 395 U. S. 458, 459 (1969), rejecting the argument " 'that an indigent person, convicted for a violation of a city ordinance, quasi criminal in nature and often referred to as a petty offense, is [not] entitled to a case-made or transcript at city expense in order to perfect an appeal . . . .' " [6]

### III

The city of Chicago urges another distinction to set this case apart from *Griffin* and its progeny. The city notes that the defendants in all the transcript cases previously decided by this Court were sentenced to some term of confinement. Where the accused, as here, is not subject to imprisonment, but only a fine, the city suggests that his interest in a transcript is outweighed by the State's fiscal and other interests in not burdening the appellate process. This argument misconceives the principle of *Griffin* no less than does the line that Rule 607 (b) expressly draws. *Griffin* does not represent a balance between the needs of the accused and the interests of society; its principle is a flat prohibition against

---

[6] It is true, as the city of Chicago argues, that in *Williams* the defendant was effectively denied any right of appeal, whereas here a transcript was not a condition precedent for appeal. The constitutional infirmity in Rule 607 (b) is not the less for that reason. The indigent defendant must be afforded as effective an appeal as the defendant who can pay.

pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way. The invidiousness of the discrimination that exists when criminal procedures are made available only to those who can pay is not erased by any differences in the sentences that may be imposed. The State's fiscal interest is, therefore, irrelevant. Cf. *Shapiro* v. *Thompson,* 394 U. S. 618, 633 (1969).

We add that even approaching the problem in the terms the city suggests hardly yields the answer the city tenders. The practical effects of conviction of even petty offenses of the kind involved here are not to be minimized. A fine may bear as heavily on an indigent accused as forced confinement. The collateral consequences of conviction may be even more serious, as when (as was apparently a possibility in this case) the impecunious medical student finds himself barred from the practice of medicine because of a conviction he is unable to appeal for lack of funds. Moreover, the State's long-term interest would not appear to lie in making access to appellate processes from even its most inferior courts depend upon the defendant's ability to pay. It has been aptly said:

> "[F]ew citizens ever have contact with the higher courts. In the main, it is the police and the lower court Bench and Bar that convey the essence of our democracy to the people.
>
> "Justice, if it can be measured, must be measured by the experience the average citizen has with the police and the lower courts." [7]

Arbitrary denial of appellate review of proceedings of the State's lowest trial courts may save the State some

---

[7] Murphy, The Role of the Police in Our Modern Society, 26 The Record of the Association of the Bar of the City of New York 292, 293 (1971).

dollars and cents, but only at the substantial risk of generating frustration and hostility toward its courts among the most numerous consumers of justice.

## IV

We conclude that appellant cannot be denied a "record of sufficient completeness" to permit proper consideration of his claims. We repeat that this does not mean that he is automatically entitled to a full verbatim transcript. He urges that his claims of insufficiency of the evidence and prejudicial prosecutorial misconduct cannot be fairly judged without recourse to the trial record.[8] *Draper* suggests that these are indeed the kinds of claims that require provision of a verbatim transcript.[9] See also *Gardner* v. *California*, 393 U. S. 367 (1969). In *Draper,* however, the State of Washington did not undertake to carry its burden of showing that

---

[8] It is not clear whether appellant seeks a full transcript. What he applied for and was denied in the Circuit Court was only "such portion of the trial transcript as the parties may designate." Moreover, he stated in his brief to the State Supreme Court that "it is expected that certain stipulations concerning *voir dire* will be forthcoming. The rest of the transcript up to the end of closing arguments is required."

[9] In *Draper,* 372 U. S., at 496–497, we remarked:

"Petitioners' contentions in the present case were such that they could not be adequately considered by the State Supreme Court on the limited record before it. The arguments about improper foundation for introduction of the gun and coat, for example, could not be determined on their merits—as they would have been on a nonindigent's appeal—without recourse, at a minimum, to the portions of the record of the trial proceedings relating to this point. Again, the asserted failure of proof with respect to identification of the defendants and the allegations of perjury and inconsistent testimony were similarly impossible to pass upon without direct study of the relevant portions of the trial record. Finally, the alleged failure of the evidence to sustain the conviction could not be determined on the inadequate information before the Washington Supreme Court."

something less than a complete transcript would suffice. Here the City of Chicago urges that the Illinois procedures for a "Settled" or "Agreed" statement may provide adequate alternatives. The city also argues that even if a verbatim record is required, less than a complete transcript may assure fair appellate review. We cannot address these questions, since the record before us contains only the parties' conflicting assertions; so far as appears, neither of the Illinois courts below regarded resolution of the dispute to be relevant in light of Rule 607 (b). That this was the view of the Circuit Court is clear. The order of the Supreme Court, however, may not have been based on the rule, but on the ground that appellant had the burden of showing that the alternatives of a "Settled" or "Agreed" statement were inadequate. We hold today that a denial of appellant's motion, either on the basis of the rule, or, in the context of his grounds of appeal, on the basis that he did not meet the burden of showing the inadequacy of the alternatives, would constitute constitutional error.

We are informed that appellant's appeal from his conviction has been docketed in the Illinois Supreme Court and that its disposition has been deferred pending our decision of this case. We therefore vacate the order of the Illinois Supreme Court and remand the case to that court for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. CHIEF JUSTICE BURGER, concurring.

I join the Court's opinion but add these observations chiefly to underscore that there are alternatives in the majority of cases to a full verbatim transcript of an entire trial. The references to what was said in *Draper* v. *Washington*, 372 U. S. 487 (1963), emphasize the duty of counsel as officers of the court to seek only what is

needed. In most cases, unlike this one, the essential facts are not in dispute on appeal, or if there is dispute it centers on certain limited aspects of the case. One need only examine briefs in appeals to see that at the appellate stage the area of conflict on the facts is generally narrow.

Every busy court is plagued with excessive demands for free transcripts in criminal cases.[1] My own experience over the years indicates that privately employed counsel are usually spartan in their demands because the client must pay his own costs. Unfortunately one consequence of the advent of the Criminal Justice Act and state counterparts is that when costs are paid by the public, counsel are sometimes profligate in their demands,

---

[1] It is not the increase in number of requested transcripts alone which has resulted in delay. The delay has been caused by the combination of this increase with the failure of the system to increase its ability to produce transcripts. Cf. Committee of Section of Criminal Law of American Bar Association, Appellate Delay in Criminal Cases: A Report, 2 Am. Crim. L. Q. 150, 153 (1964). In the typical situation in federal courts the reporter is an independent contractor selected by the Government to make a verbatim record of the entire proceedings. In some States the court reporter is an employee. In most systems the reporter independently contracts with the parties to transcribe the record at a certain fee per page. Although courts have supervisory power over the reporter, administration of the transcribing of the notes is often left largely if not completely to the discretion of the reporter. See generally Administrative Office of the United States Courts, The Court Reporting System in the United States District Courts 7–47 (1960). With the enormous increase in criminal cases, reporters are often unable to keep up with the demand for transcripts and at the same time continue with regular reporting. Some reporters fail to make adequate arrangements for stenographers to transcribe their notes, which can be done by someone other than the reporter. The failure of courts to give adequate supervision to the work of court reporters accounts for much of the delay in processing appeals. Courts have an obligation to exercise sufficient oversight of reporters to ensure that proceedings are transcribed with dispatch.

or yield their professional judgment to the client's desires. This is more than a matter of costs. An affluent society ought not be miserly in support of justice, for economy is not an objective of the system; the real vice is the resulting delay in securing transcripts and hence determining the appeal. When excessive demands are made by an appellant in order to postpone the day when the appeal is finally determined, because, for example, he is at liberty pending appeal,[2] a lawyer who cooperates is guilty of unprofessional conduct.

I quite agree with MR. JUSTICE BRENNAN that "a full verbatim record where that is necessary . . ." should be provided but judges and lawyers have a duty to avoid abuses that promote delays.

MR. JUSTICE BLACKMUN, concurring.

I concur in the opinion and judgment of the Court. I merely add an observation: The record indicates that in 1969, when the charges were brought against the appellant and he asserted his indigency, he was a third-year student in New York University Medical School. Perhaps, in the intervening two years, the appellant has completed his professional training. Perhaps by now he is even licensed and is earning his living. If so, these will be factors to be considered by the Illinois courts on remand.

---

[2] See American Bar Association, Project on Standards for Criminal Justice, Criminal Appeals § 2.3 (Approved Draft 1970), which concludes that "[a]utomatic release pending appeal" is one of the "unacceptable inducements to taking appeals." See also *id.*, § 2.5.