**UNITED STATES of America, Appellee,**

v.

**Arthur Bell TALBOTT, Appellant.**

**No. 71-1169.**

United States Court of Appeals, Eighth Circuit.

Jan. 31, 1972.

Lay, Circuit Judge, dissented and filed opinion.

Robert L. Bray, Council Bluffs, Iowa, for appellant.

Allen L. Donielson, U. S. Atty., Richard J. Barry, First Asst. U. S. Atty., Des Moines, Iowa, for appellee.

Before MATTHES, Chief Judge, LAY, Circuit Judge, and HUNTER, District Judge.[*]

MATTHES, Chief Judge.

Defendant has appealed from the judgment finding him guilty of armed robbery of a bank in Council Bluffs, Iowa, in 1970. In the first trial on March 4, 1971, the jury was unable to agree upon a verdict. On March 5, the court declared a mistrial and immediately there-

after set the case for another trial on March 11, 1971.[1] The second trial resulted in the guilty verdict upon which the judgment under attack was entered.

The basic question we are required to resolve is whether defendant, an indigent, was denied equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution, because the district court denied his request for a free transcript of the first trial.

We hold, in light of the narrow circumstances of this case, consistent with the decision of Britt v. State of North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), that the denial of the request for transcript did not deprive defendant of equal protection.

■ It is settled doctrine that the state must, as a matter of equal protection, provide indigents with the basic tools of an adequate defense. In Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967), the issue was centered on the right of an indigent defendant to a free transcript of a preliminary hearing at which the key government witness had testified. In reversing the lower court's denial of a transcript, the Court stated:

"Our decisions for more than a decade now have made clear that differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution."

389 U.S. at 42, 88 S.Ct. at 196.

In *Britt*, the Court again took notice of the equal protection rule enunciated in its prior decisions, including Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956), Roberts v. LaVallee, supra, and other cases. See Britt v. State of North Carolina, 404 U.S. 227,

---

[*] Western District of Missouri, sitting by designation.

1. The defendant had been incarcerated from October 17, 1970 because of his

inability to post a $15,000 appearance bond. The fact that he was not at liberty obviously motivated the district court in giving the case an early setting for retrial.

n. 1, 92 S.Ct. 433. The *Britt* Court, however, held on the basis of the narrow, relevant circumstances presented in that case that the rule of Griffin v. Illinois and its progeny had not been violated by reason of the failure to provide petitioner Britt with a free transcript of the first trial. The factors relied upon to reach that result persuade us that the district court's denial of the transcript of the first trial must be sustained.

■ A comparison of the circumstances in *Britt* with those present here is in order. In *Britt,* the first trial for murder required three days. Here, the first trial was completed in one day. In *Britt,* the second trial took place a month after the first trial. In this case, the second trial was scheduled for and began six days after the first trial had ended in a deadlocked jury. In *Britt,* it became clear during oral argument in the Supreme Court that petitioner could have obtained from the court reporter

> "far more assistance than that available to the ordinary defendant. . . . The trial of this case took place in a small town where, according to petitioner's counsel, the court reporter was a good friend of all the local lawyers and was reporting the second trial. It appears that the reporter would at any time have read back to counsel his notes of the mistrial, well in advance of the second trial, if counsel had simply made an informal request."

404 U.S. at 229, 92 S.Ct. at 434, 435.

Here, the court, in denying the request for the transcript, stated:

> "First of all, the Court does not deem it necessary, in the first instance, to have a transcript. This is by reason of the fact this is a one-day trial. That in addition thereto, it's immediately thereafter, and there is no forgetting on the part of the witnesses so far as the Court understands, and neither has the Court reached that stage in these proceedings where there is any indication that any impeachment by reason of some perjury of the Government's witnesses might en-

sue as it relates to the disposition of this cause.

> "This Court now says, and now finds, that in the event that he feels there is something indicated to this Court during the interim of this trial which would indicate an inconsistency or a possibility of impeachment of some witness, before cross-examination of that particular witness ensues, counsel for the defendant will be proffered an opportunity to have the Reporter read back to him any testimony that he deems necessary for his pursuit of cross-examination."

There are additional circumstances in this case which are of significance. Mr. Robert L. Bray, attorney for the defendant at the first and second trials and on appeal, had been retained and paid a fee of $1,500 for services in connection with the first trial. On March 9, two days before the second trial, Mr. Bray was appointed to represent defendant under the Criminal Justice Act. On the same day, the application for a free transcript was filed. The statement above set out in the nature of an order was made in chambers on the morning of March 11, and before the trial commenced. .

From the briefs, but not the record, we learn that after the first trial the prosecutor had obtained from the court reporter the transcript of the three identifying witnesses. A copy of this transcript was furnished to defendant's attorney some time before the second trial commenced. The record is silent as to whether defendant's attorney was required to pay for this copy, or whether it was furnished without cost. The briefs are in disagreement on this matter. In any event, the parties agree that counsel for defendant resorted to the transcript during the cross-examination of the three witnesses. Moreover, at no time during the second trial did defense counsel indicate to the court that he believed there was any inconsistency in the testimony of any of the witnesses, and at no time did he avail himself of the opportunity to have the court reporter read back the

testimony of any witness, as he was at liberty to do under the court's order.

We are convinced from a careful study of the full record that this case is the exceptional one falling within the rationale of *Britt*, where the Court took note of petitioner's concession "that he had available an informal alternative which appears to be substantially equivalent to a transcript." Here, the defendant had available by order of the court the equivalent of a transcript; indeed, he had for use a copy of the transcript of the three key government witnesses.

■ As a subsidiary issue the defendant asserts that he was denied effective assistance of counsel because he was not furnished a free copy of the transcript of all of the proceedings of the first trial. We find this contention without merit. The transcript of the second trial demonstrates that defendant's counsel was fully cognizant of all the relevant facts and that he was in no respect hampered in his cross-examination or in protecting his client's rights by reason of his failure to have a full transcript.

The judgment of conviction is affirmed.

LAY, Circuit Judge (dissenting).

The majority opinion finds that the narrow exception carved out in Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971), supports the trial judge's refusal to provide the defendant with a full transcript of the prior trial. I disagree. My understanding of the *Britt* decision brings me to an opposite conclusion. The Supreme Court in *Britt* based its result upon the petitioner's *concession* "that he had available an informal alternative which appears to be substantially equivalent to a transcript." The concession was that the court reporter was a good friend of petitioner's counsel and would have at any

time, *"well in advance of the second trial,"* read back his notes upon an informal request to do so.

There is no evidence of such circumstance here; nor does there exist any concession by the defendant that there was available an equivalent alternative to a transcript. My real difficulty with this case is that the bases upon which the district court refused the transcript here are the specific grounds rejected by the Supreme Court in the *Britt* opinion. The district court held that the court did not deem it *necessary* for the defendant to have a transcript because

(1) it was a one day trial;

(2) there is "no forgetting on the part of witnesses";

(3) there is no indication of any impeachment by reason of any perjury committed by government witnesses; and

(4) the district court further held that if during the course of trial counsel for defendant requires the notes for cross examination the reporter can read the testimony back to him.

These reasons are specifically discounted in *Britt*. Mr. Justice Marshall writing for the majority there stated: (1) "Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings without requiring a showing of need tailored to the facts of the particular case"; (2) "We have repeatedly rejected the suggestion that in order to render effective assistance, counsel must have a perfect memory or keep exhaustive notes of the testimony given at trial"; (3) in addition to impeachment a prior transcript serves the purpose of "a discovery device in preparation for trial"; (4) "Moreover, we doubt it would suffice to provide the defendant with limited access to the court reporter during the course of the second trial." This approach is " 'too little and too late.' " [1] The district court, in light

---

1. The most embarrassing and often devastating experience a trial lawyer can undergo is to attempt to impeach a witness by having the court reporter read back prior testimony, only to find that

what the witness has just said is what he had always said. See United States ex rel. Wilson v. McMann, 408 F.2d 896 (2 Cir. 1969).

of *Britt,* cannot be sustained on the reasons stated in the record.

This then requires examination as to whether other circumstances justified the district court's refusal. The majority feels some exist. I again disagree with this analysis.

It is true that petitioner's counsel did not formally apply for a free transcript until March 9, two days before the trial. However, the district court made it clear that counsel called him on March 5 (the court and counsel were in different cities) and told him of defendant's indigent circumstances and that he felt it necessary to have a full transcript. The court on March 5 told him he was going to deny this request but that he would appoint him to serve as counsel under the Criminal Justice Act.

The other circumstances relied upon by the majority are that (1) the government did produce the transcript of three witnesses "sometime before the second trial commenced" and (2) at no time during the second trial did the defendant's counsel indicate to the court that he believed there was any inconsistency in the witnesses' testimony or avail himself of the opportunity to have the court reporter read back the testimony.

The defendant states and the government conceded at oral argument that this testimony of three witnesses was not furnished until March 11, the morning trial commenced; that defendant's counsel had to pay for the transcript from his own personal funds; and that the transcript had been ordered and obtained by the government immediately following the first mistrial unknown to the defendant.

The reasoning by the majority that the defendant did not seek to impeach the witnesses or request the court reporter to read back the testimony, as specifically rejected by the *Britt* decision, is not sufficient grounds to deny availability of the full transcript. The use of such a transcript for leads to other evidence is reason enough for its unrestricted availability. The fact that the government wanted parts of it before trial (undoubtedly to go over the testimony with the witnesses) demonstrates that the transcript serves more than one purpose. Any trial lawyer who retries even a simple, uncomplicated factual situation, criminal or civil, would be considered almost derelict in his duty not to review the prior testimony of the witnesses. Reflective study, *in advance of trial,* oftentimes leads to counsel's initiative to uncover new evidence or to utilize more persuasive approaches in both direct and cross examination.[2]

Furthermore, I respectfully adopt defendant counsel's statement here that those portions of the transcript the government desired do not necessarily represent the most helpful or desired testimony for preparation by the defense. There were sixteen witnesses altogether. Although the trial took only one day, the government concedes it is a "long record." It is my judgment the defense was entitled to the full testimony and that availability of part of the testimony on the morning of trial was not sufficient to overcome the government's advantage of its earlier access to it. Furthermore, Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971), decided the same date as *Britt,* holds that the state bears the burden of showing that only a portion of the transcript will suffice for an effective appellate review. The same rule should apply here. Yet here there has been no showing whatsoever.

This was a close case on the evidence. There were many inconsistencies in the witnesses' testimony. A jury could not reach a verdict after the first trial. I

---

**2.** As Mr. Justice Douglas said in dissent to *Britt*:

"Similarly, while counsel is studying mistrial minutes, the precise words used by a witness might trigger mental processes resulting in legitimate defense strategies which otherwise might be overlooked. Such spontaneity can hardly be forecast and articulated in advance in terms of special or particularized need." 404 U.S. at 234, 235, 92 S.Ct. at 437.

am confident any lawyer who represented a client able to purchase a full transcript of an earlier trial would have urged him to do so. The only reason this was not done here was because the defendant could not personally pay for it. The government could and did. Such a mismatch in my judgment entitles the defendant to a new and fairer trial than the one which he has had.

I would reverse and remand for a new trial.