303 So.2d 411 (1974)
Ernest E. CUENI, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. U-302.
District Court of Appeal of Florida, First District.
July 18, 1974.
Rehearing Denied September 10, 1974.
*412 Richard A. Krause, Ormond Beach, John Spencer Robinson of Robinson, Whitson, Moore & Lauderback, Daytona Beach, for appellant.
Robert L. Shevin, Atty. Gen., Richard W. Prospect, Asst. Atty. Gen., and Horace Smith, Jr., Daytona Beach, for appellee.
SPECTOR, Acting Chief Judge.
The appellant has filed in this court a motion whereby he asks that he be declared an indigent for the purposes of obtaining a free transcript of his trial to be used by him in the prosecution of his appeal from his conviction of aggravated assault and five-year sentence imposed thereon.
The exhibits and affidavits attached to the motion and the averments in the motion reveal that appellant was represented by privately retained counsel at trial and said counsel is also representing on appeal. Upon taking a timely appeal, a sole assignment of error was timely filed as follows:
"The Trial Court abused its discretion in sentencing the defendant to the maximum sentence. Said Sentence (sic) was in direct and total conflict with the recommendation of the Probation and Parole Commission as evident by the Presentence Investigation Report."
Prior to the filing of this motion in the appellate court, the appellant filed a similar motion in the trial court. A hearing was held and upon considering the evidence submitted, as well as argument of counsel, the court held the appellant is regularly employed, the owner of property and had retained private counsel. Upon such finding the court ruled appellant not indigent under the laws pertaining to entitlement *413 to publicly furnished trial transcripts for appeal purposes.
After ruling that appellant is not legally indigent, the court further held in its order that appellant is not entitled to a full transcript of the trial because his assignment of error did not attack the sufficiency of the evidence or any error made during the course of the trial. The court further held that the desired transcript of trial testimony would not be pertinent to the determination of whether the trial court abused its discretion in the sentencing of the defendant.
On the basis of the record, we cannot say that the trial court erred in holding appellant to be a nonindigent for trial transcript purposes when the record reveals that his net earnings are some $985.00 monthly. While the record also shows that all or substantially all of such earnings are expended on necessities, that seems to be a plight suffered by citizens making twice as much as appellant. However, though we cannot fault the trial judge on ruling on the indigency issue, we do not rest our decision of affirmance on that issue, preferring to explore that question in another case where a determination of indigency is absolutely necessary to reaching a decision.
Rather, we go to the bare question of appellant's entitlement to a trial transcript  even assuming his indigency  when the only assignment of error raised contends the trial court abused his discretion in imposing the maximum sentence allowed by law.
It is clear that since Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, an indigent appellant is entitled to a free transcript of his trial testimony for purposes of an appeal if a nonindigent person may obtain a transcript for an appeal simply by paying for it. The Griffin case simply places the indigent defendant seeking appellate review of his conviction in the same position before the courts as that occupied by a more solvent defendant. In Eskridge v. Washington, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269, the court also dealt with the constitutional rights of indigents to free transcripts on appeal. The Eskridge decision reaffirmed the Griffin principle that a destitute defendant must be afforded as adequate an appellate review as defendants who have money enough to buy transcripts. "[A] State denies a constitutional right guaranteed by the Fourteenth Amendment if it allows all convicted defendants to have appellate review except those who cannot afford to pay for the records of their trials." Eskridge, 357 U.S. at 216, 78 S.Ct. at 1062.
In Eskridge, the court considered and rejected the validity of Washington's longstanding procedure whereby an indigent defendant would receive a stenographic transcript at public expense only if, in the opinion of the trial judge, "justice was thereby promoted". Id. at 215, 78 S.Ct. 1061. The Supreme Court rejected the validity of that test of transcript entitlement saying it could not serve as an adequate substitute for the transcript itself. After Eskridge, the Washington Supreme Court adopted a new standard by which the trial judge would determine whether an indigent is entitled to a free transcript. The validity of the new standards came up for consideration by the Supreme Court in Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899.
Draper was found guilty of robbery by a jury and thereafter filed a pro se notice of appeal and motion requesting the trial judge to order preparation of a free transcript of the record. The request for a free transcript asserted Draper's indigency and further asserted various allegations of error in the trial relating to admission and sufficiency of evidence. The motion for transcript was heard by the same judge who presided over the trial, and he denied it on the ground that Draper's guilt was established by overwhelming evidence and that the assignments of error were frivolous. Ultimately the question of the validity of such grounds as the basis upon which the *414 trial judge denied Draper's motion for a free transcript was considered by the United States Supreme Court. That court held that the standards by which Draper's entitlement to a transcript were to be determined were constitutionally impermissible. The procedure failed to provide the indigent as adequate and effective an appellate review as that given appellants with funds. Thus the court held that without the transcript, or some acceptable substitute for it, an appellate court could not review the merits of Draper's contention of errors during trial, the existence of which, if any, would be reflected in the trial record.
However, the Draper court went further and held that an indigent is not always entitled to a free transcript. Such entitlement is limited to instances where the transcript or substitute therefor is necessary to ascertain whether the assigned errors occurred. In Draper, 372 U.S. at 495, 83 S.Ct. at 779, the court stated:
"... that a State need not purchase a stenographer's transcript in every case where a defendant cannot buy it. 351 U.S., at 20, 76 S.Ct., at 591. Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript."
Following the above excerpt, the court continued with a further declaration which we deem particularly applicable to the facts of the instant case wherein no assignments of error were filed which inhere in the trial itself, but rather it concerns only the contention that the trial judge abused his discretion in imposing the maximum sentence permitted by statute for the offense involved.
The court continued at page 495, 83 S.Ct. at page 779:
"Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues. Even as to this kind of issue, however, it is unnecessary to afford a record of the proceedings pertaining to an alleged failure of proof on a point which is irrelevant as a matter of law to the elements of the crime for which the defendant has been convicted. In the examples given, the fact that an appellant with funds may choose to waste his money by unnecessarily including in the record all of the transcript does not mean that the State must waste its funds by providing what is unnecessary for adequate appellate review... ."
The views expressed in Draper, supra, were reaffirmed by the Supreme Court in Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971) in a case challenging the denial of a transcript or a suitable substitute at public cost. Once again the court held that where the errors sought to be reviewed inhered in the trial testimony a transcript must be provided to an indigent even in a non-felony case. Nonetheless, Chief Justice Burger concurred specially and observed that counsel for a party should decline to unnecessarily require a free transcript which is not needed by the reviewing court to consider the *415 assigned errors. The Chief Justice stated, 404 U.S. at 200, 92 S.Ct. at 417:
"Every busy court is plagued with excessive demands for free transcripts in criminal cases. My own experience over the years indicates that privately employed counsel are usually spartan in their demands because the client must pay his own costs. Unfortunately one consequence of the advent of the Criminal Justice Act and state counterparts is that when costs are paid by the public, counsel are sometimes profligate in their demands, or yield their professional judgment to the client's desires. This is more than a matter of costs. An affluent society ought not be miserly in support of justice, for economy is not an objective of the system; the real vice is the resulting delay in securing transcripts and hence determining the appeal. When excessive demands are made by an appellant in order to postpone the day when the appeal is finally determined, because, for example, he is at liberty pending appeal, a lawyer who cooperates is guilty of unprofessional conduct."
The remarks of the Chief Justice are particularly worthy of consideration today when all participants in the judicial administration system are straining to devise means whereby the capacity of court reporters can be stretched to meet an ever expanding demand for transcription services. It is simply not a proper expenditure of public funds to pay for a transcript of testimony that has no bearing on the issues presented to the appellate court as contended grounds for reversal. In this case the juridically useless transcript of testimony would cost some $3,500.00. In my view the Board of County Commissioners should not be required by the courts to levy and collect taxes for such needless expenditures.
A review of the foregoing excerpts from Draper and Mayer makes it clear that while the indigent is entitled to a free transcript so that his conviction can be properly considered by an appellate court, it must first appear that a transcript of the evidence is necessary in order that the appellate court can consider the errors raised. Thus, the entitlement to a free transcript must be ascertained in the context of the substantive law surrounding the assignment of errors raised.
It is the well settled law of this jurisdiction that a sentence which is within the lawful range established by the legislature for a given offense is not subject to appellate review. Shellman v. State, 222 So.2d 789 and Blackman v. State, 265 So.2d 734.
In the case at bar the only error raised is whether the trial court abused its discretion in imposing the maximum sentence allowed by law. The trial court correctly ruled that the trial testimony was irrelevant to the sole assignment and therefore properly denied appellant's motion for a trial transcript.
Accordingly the motion is denied.
JOHNSON and BOYER, JJ., concur.