**STATE of Tennessee, Appellee,**

v.

**Leonard RIGGINS, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

Oct. 18, 1982.

Permission to Appeal Denied by Supreme Court Dec. 30, 1982.

William M. Leech, Jr., Atty. Gen., John C. Zimmermann, Asst. Atty. Gen., Nashville, James S. Kidd, Dist. Atty. Gen., Fayetteville, Rondal T. Wilson, Asst. Dist. Atty. Gen., Shelbyville, Michael McCown, Asst. Dist. Atty. Gen., Fayetteville, for appellee.

Van Matthews, Fayetteville, for appellant.

## OPINION

O'BRIEN, Judge.

Defendant was convicted in the Criminal Court for Lincoln County of second degree murder and sentenced to serve ninety-nine years in the penitentiary.

The first issue on this appeal questions whether defendant's constitutional rights were abridged by denial of a written transcript of previous trials, ending in mistrials, for use in preparation of his defense.

Defendant first came to trial on June 18, 1980. After a number of prosecution witnesses had been heard a mistrial was declared for reasons not pertinent to this inquiry. On June 24, 1980 a motion was filed requesting a transcription of the testimony of witnesses examined in the previous trial for the purpose of preparing for retrial. The motion was denied, the court finding that the requested transcript was not necessary to preparation for a retrial of the case. On August 13, 1980 the case again came to trial. On August 15, 1980, after two days of trial, the court ordered a mistrial because the jurors could not agree on a verdict. On September 16, 1980 a second motion was filed to obtain a typed transcript of all sworn testimony of witnesses at both previous trials. This motion too was denied, the trial court finding that the requested transcript was not an essential tool for the preparation of the defense. The basis of the court's ruling was that trial counsel had previously heard the testimony of all of the witnesses and the court reporter tapes of the testimony was available to counsel as a reasonable and sufficient alternative. The trial was recommenced on November 17, 1980. On November 19, 1980 the jury returned a verdict of guilty of second degree murder, fixing defendant's punishment at ninety-nine years in the penitentiary as we have previously noted.

Counsel for defendant has obviously made a very thorough study of the three trials. He points out a number of discrepancies in the testimony of several of the witnesses through the course of the three trials. Among these is the testimony of Virginia Chapman, widow of the victim, relative to the time she and her husband arrived home from their place of business on the night of the homicide, and her recollection of extraneous events surrounding and subsequent to its occurrence. It is defendant's theory that these discrepancies in her testimony at the various trials, as well as that of other of the witnesses, could have effected their credibility before the jury. It would be unduly burdensome to include in this record the complete testimony of the witnesses whose evidence is questioned on behalf of the defendant. Our examination of the record indicates that the discrepancies noted by defense counsel were of only minor relevance, and were not material in any real sense to the issue at hand, that is the homicide of Mr. Harvey Lee (Jack) Chapman and defendant's connection with his death. The record is replete with evidence to show the time that the incident resulting in Mr. Chapman's death was reported to the police. Other discrepancies noted too were either explained or resolved by the evidence as a whole.

Counsel has called to our attention a number of cases both Federal and State to the effect that an indigent defendant in a criminal prosecution must be provided with the tools of an adequate defense or appeal when those tools are available for a price to other defendants. This unquestioned pre-

cept has long been recognized by the courts of this State as a constitutional mandate which cannot be ignored. However, neither the federal courts nor the courts of this State have laid down any ironclad rule which states that other means than a stenographer's transcript may not be provided to an indigent defendant if such means provide adequate and effective appellate review consonant with that available to those who may be able financially to provide such means for themselves. See *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, p. 591, 100 L.Ed. 891 (1956). In *Britt v. North Carolina,* 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) the United States Supreme Court, in speaking to the issue, was quite explicit in recognizing the value to a defendant of a transcript of prior proceedings, without imposing on him the requirement of showing a need tailored to the facts of a particular case. In holding that a defendant who claims the right to a free transcript does not—"bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by a court in hindsight", it was reiterated that the availability of adequate alternatives to a transcript may suffice. In *Mayer v. City of Chicago,* 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971) the court delineated with more particularity that the State must afford an indigent a record of sufficient completeness to permit proper consideration of any claims of error. In doing so they went on to say that a record of sufficient completeness does not translate automatically into a complete verbatim transcript. Tennessee case law adheres closely to the United States Supreme Court decisions we have cited here. See *State v. Elliott,* 524 S.W.2d 473, (Tenn.1975). Having considered defendant's brief, and after examining the record we are of the opinion that the rule stated in *Mayer,* supra, is applicable to this case. Citing from *Draper v. Washington,* 372 U.S. 487, 83 S.Ct. 774, p. 779, 9 L.Ed.2d 899 (1963), the court had this to say:

"... [p]art or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues. Even as to this kind of issue, however, it is unnecessary to afford a record of the proceedings pertaining to an alleged failure of proof on a point which is irrelevant as a matter of law to the elements of the crime for which the defendant has been convicted. In the examples given, the fact that an appellant with funds may choose to waste his money by unnecessarily including in the record all of the transcript does not mean that the State must waste its funds by providing what is unnecessary for adequate appellate review."

We have pointed out that the discrepancies in the testimony of witnesses at the separate trials, noted by defense counsel, were of an insignificant nature. This conclusion is given weight by a comparison of the testimony of the various witnesses in the complete record before us on this appeal. We find the issue to be without merit.

█ Defendant's contention that the evidence was insufficient to corroborate the testimony of his accomplice must also be overruled. This case came about as the result of the homicide of Mr. Jack Chapman who was cut down by a shotgun blast through his bedroom window. The evidence presented by the State included the statement of the defendant admitting to being in the area of the Chapman house with Larry Walden at or about the time the homicide occurred. He endeavored to place the blame for the homicide on Walden, claiming he had no knowledge it had occurred until he was informed by someone else on the following evening. A night or two later Walden purportedly advised him not to mention what had occurred on

Wednesday night or he would get the same thing the old man got. Defendant owned a .410 gauge shotgun. An empty .410 shotgun shell was found at the crime scene. Within a few hours before the homicide occurred defendant was overheard discussing a robbery with Larry Walden in which he said it might be necessary to kill a man. A hat, similar to one worn by the defendant, was found in the road near the homicide scene. A neighbor of Mr. Chapman, Mrs. Nancy Mullins, had seen the hat in the roadway near where a car was parked which aroused her suspicions. She observed the automobile and the hat about the time of the homicide. Another neighbor, Woodrow Thompson, a relative of Jack Chapman's, also observed the automobile about the same time and was able to describe the tail lights. This description fit that of the lights on the vehicle which the accomplice says he, defendant, and others, drove to the homicide scene. Another witness, James Williams, identified the hat found at the scene as one worn by the defendant. A day or two after the homicide defendant came into his tavern and ordered a beer. Mr. Williams inquired about defendant's hat and was informed he had lost it. Williams asked if he had lost it at Mr. Chapman's and defendant hit the end of the bar and walked out before a glass of beer he had ordered was served. Mr. James Koonce testified that a day or two before the shooting defendant had offered to sell him a .410 gauge shotgun, and again asked if he was still interested in buying one a day or two afterwards. He also testified that Riggins was a regular patron of his cafe and he did not recall ever seeing him wear his hat again after the date of the homicide. The accomplice, Erskine Moore, testified that on the night of the homicide he, defendant, Gerald Neal, and Bruce Price drove from the Fairgrounds in Neal's automobile out to the Chestnut Ridge area. Price and Riggins were riding in the back seat. One or the other of them directed him to stop. Both of them got out of the automobile with defendant carrying a long gun. When they returned to the car defendant still had the same gun in his hand. He heard Price say to Riggins, "You shouldn't have shot him." Defendant responded, "It was either him or me." There was evidence rosebushes, thorn bushes and shubbery grew about the area of the bedroom window where Mr. Chapman was shot. Witnesses testified that the day prior to September 14th, defendant did not have any marks about his person but on the day after he had scratches on his face, arms, and shoulders. On the morning after the homicide defendant was picked up by his employer to go to work. It was at that time that scratch marks on his body were observed. They stopped at the grocery store owned by the deceased, Mr. Chapman. Mr. Koonce, defendant's employer speculated about why the store was closed. Defendant responded he did not know but appeared to be extremely nervous. There was other evidence, but we are satisfied that recited here clearly corroborated the testimony of Erskine Moore. The jury was justified in returning a verdict of guilty of the homicide of Mr. Chapman against defendant as either a principal, or an aider and abettor.

Defendant offered an alibi defense through the testimony of several witnesses. This defense was contradicted by defendant's earlier out-of-court statement. The jury had ample reason to reject the alibi defense. The evidence was more than ample to justify any rational trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); T.R.A.P. 13(e).

The judgment of the trial court is affirmed.

BYERS, J., concurs.

DAUGHTREY, J., not participating.