RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0236p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

FRED ROBINSON, JOHNNY GIBBS, and ASHLEY
SPRAGUE, on behalf of themselves and all others
similarly situated,

          *Plaintiffs-Appellees*,

    *v.*

JEFF LONG, Commissioner of the Tennessee
Department of Safety and Homeland Security, in his
official capacity,

          *Defendant-Appellant*.

No. 18-6121

On Petition for Rehearing En Banc

United States District Court for the Middle District of Tennessee at Nashville.
No. 3:17-cv-01263—Aleta Arthur Trauger, District Judge.

Decided and Filed: July 30, 2020

Before: COLE, Chief Judge; BOGGS and SUTTON, Circuit Judges.

_____

## COUNSEL

**ON PETITION FOR REHEARING EN BANC:** Claudia Wilner, Edward P. Krugman, NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE, New York, New York, Jonathan Cole, Matthew G. White, BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC, Memphis, Tennessee, Tara Mikkilineni, CIVIL RIGHTS CORPS, Washington, D.C., for Appellees. **ON RESPONSE:** Alexander S. Rieger, Andrew B. Campbell, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellant.

The panel issued an order denying the petition for rehearing en banc. COLE, C.J. (pp. 3–5), delivered a separate dissenting opinion in which MOORE, CLAY, and STRANCH, JJ., joined.

———————————

**ORDER**

———————————

The court received a petition for rehearing en banc. The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision. The petition then was circulated to the full court. Less than a majority of the judges voted in favor of rehearing en banc.

Therefore, the petition is denied.

———————————

**DISSENT**

———————————

COLE, Chief Judge, dissenting. I respectfully dissent from the denial of rehearing en banc. Our court erred when it decided *Fowler v. Benson*, 924 F.3d 247 (6th Cir. 2019), which condoned Michigan's practice of stripping thousands of indigent residents of their driver's licenses. And we err again here when, instead of revisiting *Fowler*'s holding as an en banc court, we allow Tennessee's practice of doing the same.

The *Fowler* majority said that a state's "choice to wield the cudgel of driver's-license suspension for nonpayment of court debt" was a permissible means to "heighten[] the incentive to pay." 924 F.3d at 263. But this cruel cudgel is unconstitutional as applied to the class of plaintiffs in this case, which consists only of Tennessee drivers who cannot now, and could not at the time of their license suspension, afford to pay their debt. Offering this class the opportunity to pay a fine or have their license taken away is an "illusory choice," as the class members are, by definition, without the means to pay. *See Williams v. Illinois*, 399 U.S. 235, 242 (1970).

The Constitution does not permit states to inflict harsher punishment on indigent people simply because they are unable to pay. *See, e.g.*, *Tate v. Short*, 401 U.S. 395, 396–99 (1971) (holding imprisonment of an indigent driver for failure to pay traffic debt unconstitutional); *Williams*, 399 U.S. at 242 (holding imprisonment of an indigent defendant due to his failure to pay a fine unconstitutional); *Griffin v. Illinois*, 351 U.S. 12, 13–14, 19 (1956) (plurality) (holding that preventing an indigent defendant from appealing his conviction due to his failure to pay for a trial transcript is unconstitutional). License-suspension schemes flout this prohibition when they allow residents with the means to pay a fine to keep their driver's licenses despite having committed driving infractions, while suspending the licenses of indigent persons who commit those same infractions.

*Fowler* failed to heed the Supreme Court's wealth-discrimination cases, attempting to distinguish them based on the rationale that those cases involve liberty interests, not property interests. *See Fowler*, 924 F.3d at 260–61. Yet the Supreme Court has disavowed a liberty-

property dichotomy. *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972) (explaining that "the dichotomy between personal liberties and property rights is a false one" given the "fundamental interdependence [that] exists between the personal right to liberty and the personal right in property"). Moreover, the Supreme Court's condemnation of wealth discrimination has not been restricted to criminal matters or cases involving incarceration. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 128 (1996) (holding that "the label 'civil' should not entice us to leave undisturbed" a state law requiring indigent parents to pay a fee to appeal a termination of parental rights); *Mayer v. City of Chicago*, 404 U.S. 189, 195–97 (1971) (holding that requiring an indigent defendant to pay for a transcript in order to appeal, even where his conviction had only resulted in fines, is unconstitutional).

The parties dispute the level of scrutiny that we should use in our analysis. But as applied to the certified class, Tennessee's law cannot even pass rational-basis review—which is a low threshold, but "not a toothless one." *See Schweiker v. Wilson*, 450 U.S. 221, 234 (1981) (quoting *Mathews v. Lucas*, 427 U.S. 495, 510 (1976)). The rational-basis test asks us to consider whether the law "advances legitimate legislative goals in a rational fashion." *Id.*; *see also U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973) ("[T]o be sustained, the challenged classification must rationally further some legitimate governmental interest[.]"). Tennessee's license-suspension scheme cannot pass this test because it is irrational to attempt to extract funds from indigent residents by taking away their driver's licenses, thereby making it *more* difficult for them to make a living and pay their debt. *See Fowler*, 924 F.3d at 272 (Donald, J., dissenting).

*Fowler* attempted to evade this conclusion by reasoning that even a "counterproductive" law can pass rational-basis review. *See Fowler*, 924 F.3d at 262–63. This distorts the rational-basis test beyond recognition. A counterproductive law that actively impedes the government's interests is, definitionally, irrational. *See Schweiker*, 450 U.S. at 234; *Moreno*, 413 U.S. at 534. And rubber-stamping such arbitrary laws abdicates our judicial responsibility to safeguard constitutional protections.

It is difficult to overstate the gravity of the interests at stake. By robbing a large swath of indigent Tennesseans of the ability to drive, the law effectively denies them the ability to pursue

their livelihoods.  *See Bell v. Burson*, 402 U.S. 535, 539 (1971).  Without a license, they may not be able to pick their children up from school or take a sick parent to the hospital.  They are denied the opportunity to participate fully in their community.

These are not abstractions.  The record tells us that one plaintiff, Ashley Sprague, is a single mother who lost her job when her license suspension thwarted her ability to get to work.  Another plaintiff, Fred Robinson, has missed essential medical appointments to treat his advanced liver disease.  With over 200,000 license suspensions in Tennessee for failure to pay traffic debt, the damage wrought by this law is immeasurable.

Given the error we committed in *Fowler* and the impact of the law at issue here, this case deserves the attention of the en banc court.  I respectfully dissent.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk