IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

JANUARY 1999 SESSION

FILED

June 29, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| Appellant, | ) | C.C.A. No. 03C01-9712-CR-00541 |
| | ) | |
| vs. | ) | Knox County |
| | ) | |
| LESTER DOUGLAS BELL, | ) | Hon. Richard Baumgartner, Judge |
| | ) | |
| Appellee. | ) | (Misdemeanor Assault) |

FOR THE APPELLANT:

MARK E. STEPHENS
District Public Defender

PAULA R. VOSS and
JAMIE LYNN NILAND
Assistant Public Defenders
1209 Euclid Avenue
Knoxville, TN 37921

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

ELLEN H. POLLACK
Assistant Attorney General
425 Fifth Ave. N., 2d Floor
Nashville, TN  37243-0493

RANDALL E. NICHOLS
District Attorney General

JANET S. GURWITCH
Assistant District Attorney
400 Main, P.O. Box 1468
Knoxville, TN 37901-1468

OPINION FILED:_____

AFFIRMED

JAMES CURWOOD WITT, JR., JUDGE

OPINION

The defendant, Lester Douglas Bell, appeals from his conviction of misdemeanor assault[1] in the Knox County Criminal Court. The trial court imposed a sentence of eleven (11) months and twenty-nine (29) days to be suspended after serving the first 30 days in confinement. In this direct appeal, the defendant raises four issues:

 I. Whether the trial court erred in denying the defendant's motion for a court reporter to be provided by the state.

 II. Whether the evidence was sufficient to support the jury's verdict and whether the trial court erred in failing to set aside the verdict.

 III. Whether there was prosecutorial misconduct in the following:
  a. Eliciting testimony regarding the defendant's history of violence in his relationship with the victim;
  b. During *voir dire*, continuously using the term "domestic violence";
  c. During *voir dire*, telling the jury to assess the defendant's credibility by the fact that he had a strong interest in the outcome of the case.

 IV. Whether the trial court erred in denying full probation and ordering an excessive sentence.

After a review of the record and the briefs of the parties, we affirm the judgment of the trial court.

On November 14, 1995, Sherri Bell, the defendant's wife at that time, went to meet her friends at Applebee's after work. She called the defendant to tell him where she was going and asked him to pick up their daughter. Sometime later that evening, the defendant and the daughter went to Applebee's to locate Mrs. Bell. The defendant approached Mrs. Bell and asked her to leave. Mrs. Bell said she would leave "shortly" and the defendant left the restaurant. A few minutes later, the defendant returned to Mrs. Bell's table at Applebee's. Mrs. Bell testified that the defendant grabbed her glass and told her to leave. Mrs. Bell told the defendant to leave the restaurant and said the daughter should stay there with her. Mrs. Bell

---

[1] Tenn. Code Ann. § 39-13-101(a)(1) (1997).

testified that the defendant shoved her and caused her to fall and hit her head and nose. The defendant testified that Mrs. Bell slapped him as he was reaching for his daughter and that he pushed Mrs. Bell after she slapped him. The defendant stated that Mrs. Bell fell off her stool while trying to slap him. The defendant left with their screaming daughter as Mrs. Bell followed them through the restaurant. Mrs. Bell testified that the defendant "backhanded" her. The defendant testified that Mrs. Bell hit him on the back of the head.

Donald Gorski was sitting at the table with Mrs. Bell. Mr. Gorski testified that he did not hear the conversation between the Bells. He testified that he did not see Mrs. Bell hit the defendant, nor did he see the defendant shove or backhand Mrs. Bell. He saw Mrs. Bell on the floor after she had fallen, but he did not know how she got there. He saw Mrs. Bell with her ear and nose bleeding after the defendant left the restaurant. He "presumed" that the defendant hit her.

On this evidence, the jury found the defendant guilty of misdemeanor assault.

## I. Court Reporter

The defendant challenges the trial court's denial of his motion for a court reporter to be provided at state expense at his misdemeanor trial. In Tennessee, a defendant in a misdemeanor trial is not automatically provided with a court reporter at state expense.[2] Therefore, a verbatim transcript will be

---

[2] Tennessee Code Annotated section 40-14-307(a) states: "A designated reporter shall attend every stage of each criminal case before the court and shall record verbatim . . . all proceedings had in open court and such other proceedings as the judge may direct." Tenn. Code Ann. § 40-14-307(a) (1997). A criminal case is defined as "the trial of any criminal offense which is punishable by confinement in the state penitentiary." Tenn. Code Ann. § 40-14-301(3)

unavailable on appeal unless the defendant employs a court reporter. When a verbatim transcript is unavailable, an appellant may prepare a statement of the evidence. Tenn. R. App. P. 24(c). The appellee may file objections to the statement of the evidence, and the trial court shall decide what is properly includable in the statement of the evidence. Tenn. R. App. P. 24(c), (e).

An indigent defendant "must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." Griffin v. Illinois, 351 U.S. 12, 19, 76 S. Ct. 585, 591 (1956). Indigent defendants in both felony and misdemeanor cases have the right to adequate appellate review. Mayer v. City of Chicago, 404 U.S. 189, 195-96, 92 S. Ct. 410, 415 (1971) (citing Williams v. Oklahoma City, 395 U.S. 458, 459, 89 S. Ct. 1818, 1819 (1969)). The state must provide an indigent defendant with a "'record of sufficient completeness' to permit proper consideration of (his) claims." Draper v. Washington, 372 U.S. 487, 499, 83 S. Ct. 774, 781 (1963) (quoting Coppedge v. United States, 369 U.S. 438, 446, 82 S. Ct. 917, 921 (1962)). "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." Mayer, 404 U.S. at 194, 92 S. Ct. at 414. Accordingly, we must review the sufficiency of the "Amended Statement of the Evidence" filed by the defendant to ensure that the defendant's claims may be properly reviewed on appeal. See State v. Gallagher, 738 S.W.2d 624, 626 (Tenn. 1987).

The defendant's statement of the evidence is a very detailed account of the trial proceedings. The state and the trial judge approved the statement of the evidence. However, the defendant contends that a verbatim transcript is necessary in order "to portray the nuances and details of the witnesses' testimony and the

_____

(1997).

4

rulings of the trial judge." There is no indication that the defendant was prevented from including any information in the statement of the evidence due to state or trial court objection. We find that the statement of the evidence sufficiently describes the witnesses' testimonies and the trial judge's rulings upon which this appeal is based. The trial court did not err by denying the defendant's motion for a court reporter.

## II. Sufficiency and the Thirteenth Juror Rule

### A.

Next, the defendant challenges the sufficiency of the evidence. When an accused challenges the sufficiency of the evidence, an appellate court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990).

In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). On

the contrary, this court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. Cabbage, 571 S.W.2d at 835.

The defendant challenges the sufficiency of the evidence by saying "the state could present no corroboration of the victim's story, nor could it overcome the testimony of the accused." This court should not reweigh or reevaluate the evidence. Matthews, 805 S.W.2d at 779. The jury obviously accredited the testimony of the victim and discredited the testimony of the defendant. The defendant admitted pushing the victim. In the light most favorable to the state, the defendant "intentionally . . . cause[d] bodily injury to another" by shoving the victim such that she fell and injured her ear and nose. Tenn. Code Ann. § 39-13-101(a)(1) (1997). Therefore, the evidence sufficiently supports the defendant's conviction for misdemeanor assault.

B.

The defendant contends that there is no proof in the record that the trial judge performed his duty to act as the thirteenth juror. See Tenn. R. Crim. P. 33(f). In a criminal case, the trial judge has a mandatory duty to independently weigh the evidence to determine that it conforms with a jury's verdict. See State v. Carter, 896 S.W.2d 119, 122 (Tenn. 1995). In Carter, the Tennessee Supreme Court described the standard of appellate review for the issue of whether a trial judge has acted as the thirteenth juror:

> [W]hen the trial judge simply overrules a motion for new trial, an appellate court may presume that the trial judge has served as the thirteenth juror and approved the jury's verdict. Nonetheless, where the record contains statements by the trial judge expressing dissatisfaction or disagreement with the weight of the evidence or the jury's verdict, or statements indicating that the trial court absolved itself of its responsibility to act as the thirteenth juror, an appellate court may

6

reverse the trial court's judgment.

Id. (citations omitted). In this case, the trial judge overruled a motion for a new trial and there is no evidence of any statements made by the trial judge at any time which would indicate disagreement with the jury's verdict. Therefore, we may presume that he fulfilled his duty as the thirteenth juror and approved the jury's verdict.

However, the defendant argues that this court is precluded from presuming that the trial judge fulfilled his duty as the thirteenth juror because there is no transcript of the hearing on the motion for a new trial. The Tennessee Supreme Court stated that the trial judge does not have to explicitly state on the record approval of the jury's verdict. See id. at 120. Accordingly, the lack of a record is not relevant for this determination. In the absence of any indication in the statement of evidence that the trial judge affirmatively abdicated his role as the thirteenth juror or expressed dissatisfaction with the weight of the evidence, the trial judge's denial of the motion for a new trial is the only relevant information needed to presume that he fulfilled his duty as the thirteenth juror.

### III. Prosecutorial Misconduct

The defendant contends that there was prosecutorial misconduct in the following actions: (a) eliciting testimony regarding the defendant's history of violence in his relationship with the victim, (b) during *voir dire*, continuously using the term "domestic violence," and (c) during *voir dire*, telling the jury to assess the defendant's credibility by the fact that he had a strong interest in the outcome of the case. To establish a claim for prosecutorial misconduct, the defendant must prove that the "improper conduct could have affected the verdict to the prejudice of the defendant." Harrington v. State, 385 S.W.2d 758, 759 (Tenn. 1965)

7

## A. Testimony of the Defendant's History of Violence

The defendant contends that the prosecutor should not have elicited certain statements from the victim implying that the defendant had abused the victim in the past. The defendant argues this prosecutorial misconduct was used to bolster the state's "weak" case by placing inadmissible evidence before the jury. The defendant claims this is inadmissible evidence of other crimes, wrongs, or acts, which is governed by Tennessee Rule of Evidence 404(b).[3] The defendant filed a pre-trial motion for the state to provide notice of the use of evidence of other crimes, wrongs, or acts. Defense counsel stated on the record that no notice had been given by the state to use such evidence. The prosecutor announced that the state did not intend to present evidence of other crimes, wrongs, or acts. The trial judge ordered the state to approach the bench before presenting any 404(b) evidence during trial. When defense counsel objected to certain testimony for lack of a jury out hearing as ordered pre-trial, the trial court overruled the objection and allowed the testimony.

---

[3] This rule states as follows:

> (b) Other Crimes, Wrongs, or Acts. -- Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:
>   (1) The court upon request must hold a hearing outside the jury's presence;
>   (2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence; and
>   (3) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b).

The objectionable testimony was: (1) the victim "had seen that look before," (2) the victim "knew there would be an altercation," (3) the defendant and the victim "had problems in the past," and (4) the victim "knew there would be a fight, verbal or physical."

Generally, character evidence is inadmissible to prove action in conformity with the character or trait on a particular occasion. Tenn. R. Evid. 404(a). However, character evidence is admissible for other purposes if it is relevant and has probative value which is not substantially outweighed by unfair prejudice. Tenn. R. Evid. 401-403. The standard of review applicable to the decision to admit evidence is abuse of discretion. State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Baker, 785 S.W.2d 132, 134 (Tenn. Crim. App. 1980). When the evidence falls within Rule 404(b), the standard of review is the same if the trial judge has substantially complied with the procedural requirements of the rule. Dubose, 953 S.W.2d at 652. However, if the trial judge does not substantially comply with the procedural requirements of Rule 404(b), then no deference is given to the trial judge's decision. Id.

In order to determine which evidentiary rule or rules apply, we must assess the nature of the testimony offered. The parties are not disputing the relevance of the evidence. The defendant and the state treated this evidence as 404(b) evidence of other crimes, wrongs, or acts.

Whether these statements were evidence of other crimes, wrongs, or acts under Rule 404(b) or were statements of general character evidence under Rule 404(a), the statements fall within the general rule of admissibility in Tennessee that evidence of the defendant's prior violent actions or threats against the victim are admissible to show intent or state of mind of the accused. See State v. Ray,

9

880 S.W.2d 700, 704 (Tenn. Crim. App. 1993); State v. Glebock, 616 S.W.2d 897, 905-06 (Tenn. Crim. App. 1981); Hull v. State, 553 S.W.2d 90, 93 (Tenn. Crim. App. 1977). Such prior violent "relations [between the parties] indicate hostility toward the victim and a settled purpose to harm or injure her." Glebock, 616 S.W.2d at 905. The statements tend to show, as the state argues in its brief, that the injuries to the victim were not accidental. We find that the trial judge did not err in admitting these statements. Because the statements were admissible, there was no prosecutorial misconduct in eliciting the statements.

### B. Use of Phrase "Domestic Violence"

The defendant contends that there was prosecutorial misconduct during *voir dire* when the prosecutor continually used the phrase "domestic violence." The prosecutor asked potential jurors "if they felt it was proper for the state to get involved in domestic violence cases," and "if domestic violence defendants should be treated more leniently than strangers in assault cases." Defense counsel objected and the trial judge sustained the objection, instructing the prosecutor to discontinue use of the phrase and refer only to "assaults." The prosecutor continued to use the phrase "domestic violence." The defendant argues that the jury became prejudiced against the defendant because of these remarks. The state argues that these remarks did not affect the outcome of the case.

To determine whether prosecutorial misconduct affected the verdict to the prejudice of the defendant, five factors should be considered. The five factors to be considered are:

> (1) [t]he conduct complained of viewed in context and in light of the facts and circumstances of the case,
>
> (2) [t]he curative measures undertaken by the court and the prosecution,
>
> (3) [t]he intent of the prosecutor in making the improper

10

statement,

(4) [t]he cumulative effect of the improper conduct and any other errors in the record, [and]

(5) [t]he relative strength or weakness of the case.

Judge v. State, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

The first factor requires viewing the conduct in context. In this case, the context of the alleged misconduct was during *voir dire*. The purpose of *voir dire* is to inform counsel of a juror's qualification, interest and possible bias. State v. Onidas, 635 S.W.2d 516, 517 (Tenn. 1982). "[The] proper fields of inquiry include the juror's occupation, habits, acquaintanceships, associations and other factors, including his experiences, which will indicate his freedom from bias." Id. (quoting Smith v. State, 327 S.W.2d 308, 318 (Tenn. 1959) (citations omitted)). In this context, the questions regarding domestic violence seem to have been asked to determine if there was any bias among potential jurors. However, the continued use of the phrase domestic violence may not have been proper.

The curative measures taken by the trial judge were not effective because the prosecutor continued using the phrase after being instructed to use the phrase "assault" instead of "domestic violence." The intent of the prosecutor is not clear. However, we cannot conclude, as the defendant has, that the prosecutor intended to inflame the passions of the jury and prejudice the jury against the defendant simply by using the phrase "domestic violence." The prosecutor, by referring to the problem of domestic violence, may have been appealing to the jury to act as the community conscience. Appealing to the jury to act as the community conscience is not necessarily prosecutorial misconduct. See State v. Pulliam, 950 S.W.2d 360, 368 (Tenn. Crim. App. 1996). However, the prosecutor should not have disobeyed the trial judge's order to discontinue using the phrase "domestic

11

violence."

The factor regarding the cumulative effect of the use of "domestic violence" with other errors does not need to be considered because we find no other errors.  The last factor, the relative strength or weakness of the case, weighs in favor of the state.  Although the state's entire case consisted of the victim's testimony and another witness' testimony, if the jury believed these witnesses, then the case was strong and solid against the defendant.  The "domestic violence" comments did not enhance the state's case.  Accordingly, we find that the continuous use of the phrase "domestic violence" did not constitute prosecutorial misconduct in this case because the comments did not affect the verdict.

C.  Comment on the Defendant's Credibility

The third instance of alleged prosecutorial misconduct was during the prosecutor's *voir dire* examination of the jury pool.  The prosecutor asked the potential jurors "if they could take into account that the defendant in a criminal case has an interest in the outcome of the case when considering the defendant's credibility."  The trial judge overruled defense counsel's objection to this comment once the state responded that "they were not saying the defendant was not to be believed."  The defendant argues that this comment resulted in prejudice to the defendant and the judicial process as a whole.

The context of this comment was during *voir dire*.  As stated above, the purpose of *voir dire* is to assess the potential jurors' qualifications, interests and possible biases.  *Voir dire* is not the context in which to inform potential jurors about credibility issues.  Usually the trial judge will instruct jurors about credibility issues after the trial has begun, not during *voir dire*.  Neither the trial judge nor the prosecutor undertook curative measures.  The intent of the prosecutor is not clear,

12

but we find no intent to prejudice the defendant by this comment. The cumulative effect is not an issue because there are no other errors. As stated above, the state's case was relatively strong. "[The prosecutor] was merely pronouncing a profound truth which the trial jurors already knew if they were giving careful attention to the issues." Shelton v. State, 479 S.W.2d 817, 820 (Tenn. Crim. App. 1972). Considering all the factors, we find that this comment did not constitute prosecutorial misconduct.

## IV. Sentencing

The defendant challenges the sentence imposed as excessive and argues that immediate probation should have been granted. In determining whether the trial court has properly sentenced an individual, this court engages in a *de novo* review of the record with a presumption that the trial court's determinations were correct. Tenn. Code Ann. § 40-35-401(d) (1997). In conducting our *de novo* review, we must consider the evidence at sentencing, the presentence report, the sentencing principles, the arguments of counsel, the statements of the defendant, the nature and characteristics of the offense, any mitigating and enhancement factors, and the defendant's amenability to rehabilitation. Tenn. Code Ann. § 40-35-210(b) (Supp. 1998); Tenn. Code Ann. § 40-35-103(5) (1997). On appeal, the appellant has the burden of showing that the sentence imposed is improper. Tenn. Code Ann. § 40-35-401(d), Sentencing Comm'n Comments (1997).

In felony sentencing, the trial court has an affirmative duty to *state in the record*, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209(c) (1997); Tenn. Code Ann. § 40-35-210(f) (Supp. 1998); State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). In contrast, the misdemeanor sentencing statute only requires that the trial court *consider* the enhancement and mitigating factors when calculating the

percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. §§ 40-35-302(d) (1997); Troutman, 979 S.W.2d at 274.

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his background and social history, his present condition, including his physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). The defendant bears the burden of establishing suitability for probation, even when the defendant is presumed to be eligible for probation. See Tenn. Code Ann. §§ 40-35-303(a)-(b) (1997).

At the sentencing hearing, defense counsel presented evidence of the defendant's work history, military background, educational background, and volunteer work. His criminal record consisted of three prior offenses, two convictions from the late 1970s and one federal conviction. One of the convictions from the late 1970s was for assault, but there is no evidence regarding the circumstances of that conviction.

We review the trial court's decision with a presumption of correctness. The trial judge stated his concern about the defendant's "failure to recognize his responsibility for this conduct." The trial judge considered the defendant's prior criminal history but found little significance in two of the previous convictions. The only conviction the trial judge found to be significant was a twenty year old assault conviction.

14

The Tennessee Supreme Court has stated that "there is no rule in this State requiring a Defendant to admit his guilt in order to seek probation." State v. Bunch, 646 S.W.2d 158, 160 (Tenn. 1983) (citing State v. Gautney, 607 S.W.2d 907, 910 (Tenn. Crim. App. 1980)). The Bunch court held that reversal would be required if the sole basis for a trial court's denial of probation was that the defendant did not admit guilt. Bunch, 646 S.W.2d at 160. The defendant argues that reversal is required here because his failure to admit guilt was the sole basis for denial of probation. We disagree.

In denying probation, the trial judge made findings regarding the nature and circumstances of the offense, the defendant's prior criminal history, and the defendant's potential for rehabilitation. The defendant has failed to carry the burden of establishing immediate probation suitability in the trial court and on appeal. From our review of the sentencing hearing transcript, we find that the trial judge properly ordered a short period of incarceration.

In consideration of the foregoing, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE

_____
JOHN K. BYERS, SENIOR JUDGE