IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 15, 2011 Session

STATE OF TENNESSEE, EX REL. FRANCES CRAIG CREIGHTON
v.
WILBUR FOSTER CREIGHTON

Direct Appeal from the Circuit Court for Davidson County
No. 95D-3220     Carol Soloman, Judge

No. M2010-01171-COA-R3-CV - Filed April 7, 2011

This is an appeal from the trial court's order, finding Appellant in criminal contempt of court for willful failure to pay his ordered child support. Appellant appeals, alleging that the trial court erred in: (1) denying Appellant a full transcript of the hearing at the State's expense; (2) giving little or no credence to the evidence offered by Appellant's witness; and (3) finding Appellant in criminal contempt for willful failure to pay child support. Discerning no error, we affirm.

Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Edward J. Gross, Nashville, Tennessee, for the appellant, Wilbur Foster Creighton.

Robert E. Cooper, Jr., Attorney General and Reporter; Joe Whalen, Associate Solicitor General; Warren Jasper, Senior Counsel, for appellee, State of Tennessee, ex rel. Frances Craig Creighton.

Opinion

Appellant Wilbur Foster Creighton and Francis Craig Creighton were divorced on June 25, 1996, by order of the Davidson County Circuit Court. The final decree of divorce required Mr. Creighton to pay $1,000 per month in child support for the three minor children that were born to the marriage. Mr. Creighton was also ordered to provide medical insurance for the children. The order on child support was amended several times. The latest order, entered on September 23, 2008, requires Mr. Creighton to pay $1,320 per month in child

support.

On March 2, 2010, the State of Tennessee *ex rel*. Francis Craig Creighton (the "State," or "Appellee") filed a petition for criminal contempt and failure to provide medical insurance against Mr. Creighton.[1] The petition, brought under Tennessee Code Annotated Section 29-9-101 *et seq*., alleges that Mr. Creighton had an accumulated child support arrearage in the amount of $22,400 as of February 24, 2010. The petition further states that Mr. Creighton is able bodied and capable of pursuing gainful employment. A notice that he was charged with criminal contempt, as well as a show cause order requiring Mr. Creighton to appear in court on March 31, 2010, was filed contemporaneously with the contempt petition. Mr. Creighton filed an affidavit of indigency on March 11, 2010. By order of March 11, 2010, the trial court found Mr. Creighton indigent, and appointed an attorney to represent him at the hearing.[2] On April 5, 2010, Mr. Creighton filed an answer to the petition, in which he states that he is medically and mentally unable to work; consequently, Mr. Creighton avers that he is not in willful contempt of court.

The hearing on contempt was held on May 19, 2010, before John Manson, sitting as a Substitute Judge in Judge Carol Soloman's court.[3] Immediately before the hearing began, Mr. Creighton's counsel made an oral motion that he be provided a verbatim transcript of the evidence at the State's expense. As grounds for his motion, Mr. Creighton alleged that the proceeding involved "[a] criminal offense wherein the State was seeking incarceration of up to 180 days." Because Mr. Creighton was proceeding as an indigent person, he argued that he was entitled to a full transcription of the evidence at the State's expense. In preparing a full record for this Court's review, the trial court, upon Mr. Creighton's motion to supplement the appellate record, entered an order on December 9, 2010. This order provides that Judge Manson denied Mr. Creighton's request for a full transcript "because the court has

---

[1] This is a Title IV-D case. Because Ms. Creighton was receiving Title IV-D services, the State was authorized to proceed on her behalf. Tenn. Code Ann. § 71-3-124(c) (2004); 42 U.S.C. § 654(4) (2010); 45 C.F.R. § 302.33 (2010).

[2] Tennessee Code Annotated Section 8-14-201 defines an "indigent person," in relevant part, as:

> [O]ne who does not possess sufficient means to pay reasonable compensation for the services of a competent attorney:
> (1) In any criminal prosecution or juvenile delinquency proceeding involving a possible deprivation of liberty...

[3] Although the orders entered by Substitute Judge Manson indicate that he is a "Substitute Judge," from the record we conclude that he is, in fact, a Special Master, appointed under Tennessee Code Annotated §17-2-124. Consequently, the requirements of Tenn. Code Ann. §17-2-118(a) through (e) for appointment of a substitute judge are not triggered in this case. *See* Tenn. Code Ann. §17-2-118(f).

no authority, nor was one cited, to appoint a court reporter on a misdemeanor case." Consequently, there is no transcript of the hearing on the petition for criminal contempt.

Although there is no transcript of the hearing, pursuant to Tennessee Rule of Appellate Procedure 24(c), the appellate record contains a statement of the evidence adduced at the hearing. In addition, the State submitted an affidavit of direct payments (Trial Exhibit 1), showing that Mr. Creighton had paid no child support from September 2008 to the date of the hearing. According to the statement of evidence, Ms. Creighton testified that she and Mr. Creighton were married for thirteen years and that, during that time, Mr. Creighton had not been diagnosed with a mental health disorder, though he had seen a doctor for a mood disorder. Ms. Creighton also testified that Mr. Creighton owned and operated his own tree trimming business.

Mr. Creighton's mother, Donnie Creighton, also testified at the hearing. In relevant part, she stated that her son was a graduate of Belmont College and that she did not know of any mental or physical disabilities he had. Donnie Creighton testified that she did not know where her son lived and that she was not sure how he worked or supported himself. However, upon cross examination, Donnie Creighton testified that she had given Mr. Creighton approximately $20,000.00 in 2009 to help support him.

Mr. Forest Osborne testified for Mr. Creighton. He stated that he had worked as a mental health counselor for twenty-seven years. According to the testimony, Mr. Osborne holds a Bachelor's degree in Education, but does not have a degree in mental health, guidance, or counseling. Mr. Osborne testified that he meets with clients, reviews their medical background, and counsels them. Concerning his relationship with Mr. Creighton, Mr. Osborne testified that he had "been assigned to Mr. Creighton when Mr. Creighton came to [Mr. Osborne's] facility." Mr. Osborne met with Mr. Creighton approximately two months prior to the hearing, when he observed Mr. Creighton and reviewed his medical history.[4] Mr. Osborne stated that Mr. Creighton's diagnosis was anxiety disorder, mood disorder, and attention deficit disorder. Although Mr. Osborne ultimately opined that Mr. Creighton was unemployable, he did admit that, with consistent medication, a person with Mr. Creighton's diagnosis could be stabilized.

---

[4] The statement of the evidence does not mention medical records, which were provided to this Court under seal, except to say that Mr. Osborne testified that he reviewed them. This Court has reviewed the sealed records, and we note that most of these records are dated from mid to late 2010. As noted above, the hearing on contempt was held on May 19, 2010; therefore, it appears that most of these medical records were unavailable at the time of the hearing and, consequently were not considered by the trial court and have no bearing on this appeal. However, even if this Court allows, *arguendo*, that the medical records are properly before it, we nonetheless conclude that they contain nothing to change our analysis.

Following the hearing, Judge Manson found Mr. Creighton in contempt of court on eighteen separate occasions, and sentenced him to ten days in jail for each offense, for a total of 180 days. The order is a form order, on which Judge Manson checked certain items. As is relevant to this appeal, Judge Manson checked that "Respondent is guilty of criminal contempt pursuant to T.C.A. Section 20-9-101 and has violated the court's order on 18 occasion."[5] Under the heading "Sentencing," Judge Manson checked that "Respondent shall be sentenced to 10 days per offense for a total of 180 days," and specified that "[s]aid sentence is to be served day for day." Judge Manson's order also includes a written finding, namely:

> [Mr. Creighton] was clearly aware of the child support order and willfully disobeyed it. The court finds [Mr. Creighton] ab[le] to work and that no medical proof was presented to prove a medical diagnosis of inability to work. The court finds [Mr. Creighton] had money to pay child support but failed to make any payments.

Mr. Creighton was found to owe $35,208 in back child support, and was ordered to pay $257 per month in current child support, plus $216.66 per month toward his arrearage. Judge Manson also modified the support order to reflect that two of the parties' children are emancipated. Following the hearing, Mr. Creighton was immediately remanded to the custody of the Davidson County Sheriff. By Order of May 28, 2010, Judge Carol Soloman confirmed and adopted the ruling of Judge Manson.[6]

On June 11, 2010, the court entered an amended performance bond, requiring Mr. Creighton to pay $7,500 to secure his performance in payment of $307 per week in child support. Mr. Creighton posted a performance bond in the amount of $7,500 on June 18, 2010, and was released from jail. Mr. Creighton appeals and raises four issues for review; however, we conclude that there are only three issues, which we state as follows:

> 1. Whether the trial court was required to provide a transcript of the proceedings in this matter, at its expense or at the State's expense?

---

[5] Underlined sections in this sentence and the next were written in by Judge Manson.

[6] The record indicates that Judge Manson's order was not entered in the record until June 23, 2010. Apparently Judge Soloman reviewed Judge Manson's findings and approved same prior to the entry of Judge Manson's order.

2. Whether the court was within its discretion to disregard the expert testimony proffered by Mr. Creighton?

3. Whether the trial court's finding of contempt is supported by the evidence?

Before reaching the issues, we pause to review the relevant law on contempt. An act of contempt is a willful or intentional act that offends the court and its administration of justice. Tenn. Code Ann. § 29-9-102; *see also* **Graham v. Williamson**, 164 S.W. 781, 782 (Tenn. 1914). Traditionally, contempt has been classified as civil or criminal depending upon the action taken by the court to address the contempt. Title 29, Chapter 9 of the Tennessee Code on Remedies and Special Proceedings provides the grounds for contempt and the remedies available to the court. Tenn. Code Ann. §§ 29-9-102 through 104. As is relevant to the instant case, Tennessee Code Annotated Section 29-9-102 provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
> *                              *                              *
>
> (3) The willful disobedience or resistance of any officer of the said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.

In order to find contempt under this statute, a court must find the misbehavior, disobedience, resistance, or interference to be willful.

Following a finding of contempt, courts have several remedies available depending upon the facts of the case. A court can imprison an individual to compel performance of a court order. This is typically referred to as "civil contempt." This remedy is available only when the individual has the ability to comply with the order at the time of the contempt hearing. Tenn. Code Ann. § 29-9-104;[7] *see also* **Garrett v. Forest Lawn Memorial Gardens**,

---

[7] Tennessee Code Annotated § 29-9-104 provides:

> **Omission to perform act.**-(a) If the contempt consists in an omission to perform an act which it is yet in the power of the person to perform, he may

(continued...)

588 S.W.2d 309, 315 (Tenn. Ct. App.1979). Thus, with civil contempt, the one in contempt has the "keys to the jail" and can purge the contempt by complying with the court's order. Tenn. Code Ann. § 29-9-104; *Garrett*, 588 S.W.2d at 315. In civil contempt, the imprisonment is meted out for the benefit of a party litigant. *See Shiflet v. State*, 400 S.W.2d 542, 543 (Tenn. 1966).

A court may also imprison and/or fine an individual simply as punishment for the contempt. This remedy is commonly referred to as "criminal contempt." Unless otherwise provided, the circuit, chancery, and appellate courts are limited to imposing a fine of $50.00 and to imprisoning an individual for not more than ten days. Tenn. Code Ann. § 29-9-103.[8] A party who is in criminal contempt cannot be freed by eventual compliance. *See Shiflet*, 400 S.W.2d at 543. In the instant case, it is undisputed that Mr. Creighton was found guilty of criminal contempt.

## Transcript

From his appellate brief, Mr. Creighton seems to first argue that the trial court denied him the right to have a verbatim transcript of the evidence. However, there is no evidence in this record to suggest that the trial court actually denied Mr. Creighton the opportunity to have the hearing transcribed; rather, Mr. Creighton was only denied a transcript at the State's expense. Having narrowed the issue, we turn to the record.

As discussed above, Mr. Creighton is an indigent person. As such, he is entitled to help from the court in order to satisfy the requirements of due process. Tennessee Supreme Court Rule 13 requires that an attorney be appointed, at the State's expense, to represent an indigent party:

---

[7](...continued)
> be imprisoned until he performs it.
> (b) The person or if same be a corporation, then such person or corporation can be separately fined, as authorized by law, for each day it is in contempt until it performs the act ordered by the court.

[8] Tennessee Code Annotated § 29-9-103 provides:

> Punishment.-(a) The punishment for contempt may be by fine or by imprisonment, or both.
> (b) Where not otherwise specially provided, the circuit, chancery, and appellate courts are limited to a fine of fifty dollars ($50.00), and imprisonment not exceeding ten (10) days, and, except as provided in § 29-9-108, all other courts are limited to a fine of ten dollars ($10.00).

(c) All general sessions, juvenile, trial, and appellate courts shall appoint counsel to represent indigent defendants and other parties who have a constitutional or statutory right to representation (herein "indigent party" or "defendant") according to the procedures and standards set forth in this rule.

(d)(1) In the following cases, and in all other cases required by law, the court or appointing authority shall advise any party without counsel of the right to be represented throughout the case by counsel and that counsel will be appointed if the party is indigent and requests appointment of counsel.
(A) Cases in which an adult is charged with a felony or a misdemeanor and is in jeopardy of incarceration;
(B) Contempt of court proceedings in which the defendant is in jeopardy of incarceration...

Tennessee Supreme Court Rule 13, which encompasses indigent defendants in both criminal and civil matters, does not, however, mandate that all indigent parties are entitled to a full transcript of the proceedings at the State's expense. However, Tennessee Criminal Procedure Rule 37(c) not only gives an indigent criminal defendant the right to have an attorney appointed, but also gives that defendant the right to have a transcript or statement of evidence furnished by the State:

If the defendant is indigent, the court shall advise the defendant that, if he or she has not already retained appellate counsel or if counsel has not previously been appointed, the court will appoint appellate counsel and that a transcript or statement of the evidence will be furnished at state expense.

Tenn. R. Crim P. 37(c)(2).

In order to secure a criminal defendant's right to a transcript at the State's expense, Tennessee Code Annotated Section 40-14-307(a) provides:

A designated reporter shall attend every stage of each criminal case before the court and shall record verbatim, by a method prescribed or approved by the administrative director, all proceedings had in open court and other proceedings as the judge may direct. The reporter shall attach the reporter's official certificate to the records so taken and promptly file them with

the clerk of the court, who shall preserve them as a part of the records of the trial.

Both Tennessee Rule of Criminal Procedure 37(c) and Tennessee Code Annotated Section 40-14-307(a) deal with the rights of criminal defendants in criminal cases. Tennessee Code Annotated Section 40-14-301(3) defines a "criminal case" as:

> [T]he trial of any criminal offense which is punishable by confinement in the state penitentiary and any proceeding for the writ of habeas corpus wherein the unlawful confinement is alleged to be in a state, county or municipal institution...

In support of his argument that he is entitled to a full transcript of these proceedings at the State's expense, Mr. Creighton relies upon the case of *State v. Draper*, 800 S.W.2d 489 (Tenn. Crim. App. 1990). The *Draper* case involved a criminal defendant's appeal to the Court of Criminal Appeals. It appears, from our reading of his argument, that Mr. Creighton considers himself to be a criminal defendant because of the court's finding of criminal contempt. The first question we must address, therefore, is whether a hearing on criminal contempt arising out of a civil matter is, in fact, a criminal proceeding so as to trigger the requirements for a State-funded court reporter under Tennessee Code Annotated Section 40-14-307(a) and Tennessee Rule of Criminal Procedure 37(c)(2).

The Tennessee Attorney General has addressed the question of whether criminal contempt proceedings constitute criminal proceedings in the context of whether district public defenders are prohibited from representing indigent persons in child support or other contempt of court proceedings. In opining that public defenders are statutorily prohibited from representing indigents charged under Tenn. Code Ann. § 29-9-102, the Attorney General specifically concluded that it is likely courts would hold that criminal contempt cases, brought under the general criminal contempt statute, Tenn. Code Ann. § 29-9-102, are not "criminal prosecution[s]". In reaching this conclusion, the Attorney General reasoned, in relevant part, as follows:

> Prior to its amendment in 1991, the statutory definition of "indigent person" encompassed those charged in "any criminal prosecution or other proceeding involving a possible deprivation of liberty." Tenn. Code Ann. § 8-14-201(1)(repealed)(emphasis added). However, in 1991, the Legislature amended the definition in Tenn. Code Ann. § 8-14-201(1) to provide that public defenders shall represent those who do not possess sufficient means to pay reasonable

-8-

compensation for the services of a competent attorney in "any criminal prosecution or juvenile delinquency proceeding involving a possible deprivation of liberty."

\*                              \*                              \*

We...first examine whether criminal contempt proceedings constitute a "criminal prosecution", within the meaning of Tenn. Code Ann. § 8-14-201(1). We note that the answer is not entirely clear. Our research has revealed no Tennessee decisions which have considered the specific question.

If, on the one hand, a court were to construe Section 8-14-201(1)'s language according to "plain language" principles, it could find that criminal contempt proceedings constitute a "criminal prosecution." Criminal contempt is generally regarded as a crime, and is thus "criminal" in nature. *See, **Bloom v. Illinois***, 391 U.S. 194, 201, 88 S. Ct. 1477, 1481, 20 L. Ed.2d 522 (1968); ***Black v. Blount***, 938 S.W.2d 394, 398, 402 (Tenn. 1996). Furthermore, Rule 42 of the Tennessee Rules of Criminal Procedure, entitled "Criminal Contempt", uses the term "prosecuted" in prescribing required procedure. Rule 42(b), Tenn. R. Crim. Proc.

On the other hand, recent decisions of the lower appellate courts have continued to cite with approval prior holdings that a criminal contempt proceeding is not a criminal prosecution. *See, e.g., **Wilson v. Wilson***, No. 01A01-9704-CV-00152, 1998 WL 122720 (Tenn. App. 1998)(citing ***State v. Sammons***, 656 S.W.2d 862, 867 (Tenn. Crim. App. 1982)). In Wilson v. Wilson, the Court of Appeals examined whether private counsel who represented a party to an action should be disqualified from prosecuting a petition for criminal contempt against the other party. In considering whether due process considerations were implicated by the practice, the Court stated, in dictum:

> The ***Sammons*** court [***State v. Sammons***, 656 S.W.2d 862, 867 (Tenn. Crim. App. 1982)] noted that, contrary to the safeguards in the federal

system, a defendant in a criminal contempt action in this state is not afforded a jury trial. ***Sammons***, 656 S.W.2d at 867. Furthermore, a criminal contempt proceeding is not even considered a criminal prosecution. ***Id.*** Because of its minor nature, criminal contempt in Tennessee has a statutory maximum fine of fifty ($50) dollars and ten (10) days imprisonment which may be ordered in circumstances other than nonpayment of child support. T.C.A. § 29-9-103 (Supp. 1997).

***Wilson v. Wilson***, *supra*, 1998 WL 122720 at p. 3...

In ***State v. Sammons***, 656 S.W.2d 862 (Tenn. Crim. App. 1982), the Court held that defendant's contempt citations for kidnapping? his child did not bar subsequent prosecution under double jeopardy principles. 656 S.W.2d at 866-869. In distinguishing a contrary decision by the Illinois Supreme Court, the Court of Criminal Appeals stated:

> In terms of both its purpose...and its substantive provisions, T.C.A. § 29-9-102 can hardly be interpreted as creating the same kind of "serious contempt" of quasi-crime that is contemplated under the Illinois scheme. This is manifestly true despite the fact that for some purposes the contempt procedure is treated under Tennessee law as being criminal in nature. *See, e.g.,* ***Strunk v. Lewis Coal Co.***, 547 S.W.2d 252, 253 (Tenn. Cr. App. 1976) (standard of proof for "criminal contempt" is guilt beyond a reasonable doubt). In contrast to the Illinois cases, for example, there is no requirement in Tennessee that a person sentenced under T.C.A. § 29-9-102 be afforded a jury trial. [Citation omitted]. <u>And it has been explicitly held that a Tennessee contempt proceeding is not a criminal prosecution.</u> ***Bowdon v. Bowdon***, 198 Tenn. 143, 278 S.W.2d 670, 672

(1955).[9]

656 S.W.2d at 867 (emphasis added). Such decisions continue to recognize that while criminal contempt is generally regarded as a crime, prosecutions of criminal contempt:

> are not intended to punish conduct proscribed as harmful by the general criminal laws. Rather, they are designed to serve the limited purpose of vindicating the authority of the court. In punishing contempt, the Judiciary is sanctioning conduct that violates specific duties imposed by the court itself, arising directly from the parties' participation in judicial proceedings.

*Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 800, 107 S.Ct. 2124, 2134, 95 L. Ed.2d 740 (1987). While contempt proceedings are sufficiently criminal in nature to warrant the imposition of many procedural protections, their fundamental purpose is to preserve respect for the judicial system itself. *Id*.

Moreover, we believe it is likely that a court, in construing Tenn. Code Ann. § 8-14-201(1), would look to precedents which have construed analogous language contained within the statutes establishing the prosecutorial duties of district attorneys general. Such precedents have construed the statutory language imposing a duty upon district attorneys general "[t]o attend the circuit courts in his district, and every other court therein having criminal jurisdiction, and prosecute on behalf of the state in every case is which the state is a party, or in anywise interested", Tenn. Code Ann. § 8-7-103(1), and have held that district attorneys general have neither an affirmative duty to prosecute criminal contempts, nor are they

---

[9] The ***Bowdon*** Court specifically held that "[c]ontempt proceedings are *sui generis*, and are neither civil actions nor criminal prosecutions as ordinarily understood within sixth amendment to United States Constitution. U.S.C.A.Const. Amend. 6." ***Bowdon***, 278 S.W.2d 670, 672 (Tenn. 1955).

prohibited from doing so. In ***Miller v. Washington County***, 143 Tenn. 488, 497, 226 S.W.2d 199, 205 (1920), the Supreme Court held that the statutory duty of district attorneys general refers only to "criminal prosecutions." In ***Black v. Blount***, 938 S.W.2d 394 (Tenn. 1996), the Supreme Court noted the differences between prosecutions of general crimes and those of contempt; it concluded that district attorneys general have no mandatory statutory duty to prosecute criminal contempts, but emphasized that they are not prohibited from prosecuting such cases [emphasis in original]. ***Id***. at 402-403.

Based upon all of the above, we conclude that it is likely that a court would hold that criminal contempt cases are not "criminal prosecution[s]", for purposes of determining the scope of public defenders' representation under Tenn. Code Ann. §§ 8-14-201(1), *et seq*.

98 Tenn. Op. Att'y Gen. 092, 1998 WL 227262 (Tenn. A.G. April 15, 1998) (footnote omitted).

In a case issued prior to the Attorney General's Opinion, ***Perkinson v. Perkinson***, No. 01A-01-9602-CV-00059, 1996 WL 426807 (Tenn. Ct. App. July 31, 1996), *perm. app. denied* (Tenn. Nov. 25, 1996), this Court discussed the question of whether a party charged with criminal contempt should be treated as a criminal defendant for purposes of his right to a jury. In concluding that criminal contempt is not a criminal offense, we reasoned:

Admittedly, criminal contempt is a crime in the ordinary sense, and certain constitutional provisions apply to the punishment proceeding. ***Bloom v. Illinois***, 391 U.S. 94, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968); ***Strunk v. Lewis Coal Co.***, 547 S.W.2d 252 (Tenn. Crim. App.1976). And we have held that the Rules of Criminal Procedure must be followed. ***Storey v. Storey***, 835 S.W.2d 593 (Tenn. App.1992). Since Rule 23, Tenn. R. Crim. Proc. requires a written waiver of the jury in all cases except small offenses, and a small criminal offense in Tennessee is defined as one that does not impose any incarceration as punishment, *see* ***State v. Dusina***, 764 S.W.2d 766 (Tenn.1989), we must decide if a charge of criminal contempt under Tenn. Code Ann. § 29-9-103 (maximum punishment of a fifty dollar fine and/or ten days in jail) is a major criminal offense to which

-12-

the right to a trial by jury attaches.

In ***Brown v. Latham***, 914 S.W.2d 887 (Tenn.1995), the Supreme Court decided that an accused did have the right to a jury trial in a prosecution for violating Tenn. Code Ann. § 36-5-104(a) which carried a possible sentence of six months in jail. But the court recognized the right to a jury because Tenn. Code Ann. § 36-5-104 is a "general criminal statute." The court reserved judgment on "the constitutional limitations on a court's authority to punish for contempt" and "the distinction between a criminal offense and a criminal contempt." 914 S.W.2d at 889.

In this court's opinion in ***Brown v. Latham***, we said:

> Although criminal contempt is a crime, for constitutional purposes, it is not the same as a violation of the criminal law.... "The proceeding in contempt is for an offense against the court as an organ of public justice, and not for a violation of the criminal law." ***State v. Howell***, 80 Conn. 668 at ----, 69 A. 1057 at 1058 (1908). "Contempt proceedings are sui generis-neither a civil action nor a criminal prosecution as ordinarily understood." ***Bowdon v. Bowdon***, 198 Tenn. 143 at 146, 278 S.W.2d 670 at 672 (1955). Thus, a defendant may be jailed for criminal contempt without a trial by jury, but the same defendant may demand a jury trial in a charge of violating a criminal statute if the statute provides that incarceration is one of the choices for punishment.

> Appeal No. 01-A-01-9401-CV-00008 (Filed in Nashville, October 19, 1994).

***Perkinson***, 1996 WL 426807, at *2-3.

Here, the State's petition was brought under Tennessee Code Annotated Section 29-9-101, *et seq*. Moreover, Judge Manson's order indicates that Mr. Creighton is found guilty of criminal contempt "pursuant to T.C.A. Section 29-9-101." We adhere to the principle

stated in the foregoing cases and hold that the violation of a court order, punishable by a fifty dollar fine and/or ten days in jail under Tennessee Code Annotated Section 29-9-101, is not a "criminal case," as defined in Tennessee Code Annotated Section 40-14-301(3), *supra*. Consequently, cases brought under Tennessee Code Annotated Section 29-9-101 do not trigger the due process mandates of Tenn. R. Crim P. 37(c)(2) or Tennessee Code Annotated Section 40-14-307(a) to provide the indigent defendant with a verbatim transcript at the State's expense.

However, even if this Court were to assume, *arguendo*, that Mr. Creighton is a criminal defendant, this fact does not automatically entitle him to a verbatim transcript of the evidence at the State's expense. In the first instance, Tennessee Rule of Criminal Procedure 37(c), *supra*, requires *either* a transcript *or* a statement of the evidence. Therefore, in approving the statement of the evidence, the trial court complied with the requirements of this rule. Moreover, in ***Bell v. State***, No. 03C019712CR00541, 1999 WL 436432 (Tenn. Crim. App. June 29, 1999), the Court of Criminal Appeals addressed the question of whether an indigent defendant, charged with a misdemeanor offense, was entitled to a verbatim transcript of the proceedings at the State's expense. In relevant part, the ***Bell*** Court held:

> An indigent defendant "must be afforded as adequate appellate review as defendants who have money enough to buy transcripts." ***Griffin v. Illinois***, 351 U.S. 12, 19, 76 S. Ct. 585, 591, 100 L.Ed. 891 (1956). Indigent defendants in both felony and misdemeanor cases have the right to adequate appellate review. ***Mayer v. City of Chicago***, 404 U.S. 189, 195-96, 92 S. Ct. 410, 415, 30 L.Ed.2d 372 (1971) (citing ***Williams v. Oklahoma City***, 395 U.S. 458, 459, 89 S. Ct. 1818, 1819, 23 L.Ed.2d 440 (1969)). The state must provide an indigent defendant with a " 'record of sufficient completeness' to permit proper consideration of (his) claims." ***Draper v. Washington***, 372 U.S. 487, 499, 83 S. Ct. 774, 781, 9 L.Ed.2d 899 (1963) (quoting ***Coppedge v. United States***, 369 U.S. 438, 446, 82 S. Ct. 917, 921, 8 L.Ed.2d 21 (1962)).

***Bell***, 1999 WL 436432, at *2.

In addressing what constitutes a "record of sufficient completeness," our Supreme Court, in ***State v. Gallagher***, 738 S.W.2d 624 (Tenn. 1987), stated:

> A "record of sufficient completeness" does not translate automatically into a complete verbatim transcript.... a State "may

-14-

find other means [than providing stenographic transcripts] for affording adequate and effective appellate review to indigent defendants" ... "alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." [Citations omitted.] *Mayer v. City of Chicago*, 404 U.S. at 194, 92 S. Ct. at 414.

*Gallagher*, 738 S.W.2d at 625.

In *State v. Draper,* 800 S.W.2d 489 (Tenn. Crim. App. 1990), upon which Mr. Creighton relies for his argument, the Court of Criminal Appeals held, in relevant part, as follows:

When the issues "make out a colorable need for a complete record", the State is required to provide the defendant with a complete verbatim transcript of the evidence and proceedings. If the State contends that a verbatim transcript of only a portion of the proceedings, or, in the alternative, a statement of the evidence will suffice, the State has the burden or onus of showing that a partial transcript or a statement of the evidence is sufficient for the defendant to effectively present the issues and have them determined by the appellate court on the merits.

*Draper* 800 S.W.2d at 494 (citations omitted).

In the instant case, Mr. Creighton's motion for a verbatim transcript at the State's expense was denied. However, as noted above, the record does contain a Tennessee Rule of Appellate Procedure 24 statement of the evidence. Based upon the foregoing discussion, we must review the sufficiency of the statement of the evidence in order to ensure that Mr. Creighton's issues may be properly adjudicated on appeal. *See State v. Gallagher*, 738 S.W.2d at 626. It is well settled that, when a verbatim transcript is unavailable, a party may prepare a statement of the evidence. Tenn. R. App. P. 24(c). If the other party files an objection to the statement of the evidence, then the trial court shall decide what should properly be included in the statement of the evidence. Tenn. R. App. P. 24(c), (e).

Turning to the record, Mr. Creighton asserts that the statement of the evidence was provided by the State and that it is insufficient insofar as it allegedly excludes "the specific findings and language, [and] the specific hypothetical questions and responses" adduced at the hearing. Before addressing the sufficiency of the statement of the evidence, we first note

that the record does not indicate that Mr. Creighton lodged any objection, at the trial level, to the statement of the evidence proffered by the State. As noted above, Tennessee Rule of Appellate Procedure 24 provides that the party opposing the statement of the evidence may object thereto, thus requiring the trial court to decide what should be included in the statement of the evidence. It does not appear that Mr. Creighton availed himself of this procedure. Moreover, there is no indication in the record that Mr. Creighton offered his own statement of the evidence. Consequently, this Court cannot compare his proposed statement with the statement approved by the trial court.

Nonetheless, we note that the statement of the evidence contained in the record provides a very detailed account of the trial proceedings. The State and the trial judge approved the statement of the evidence. However, Mr. Creighton now contends that a verbatim transcript is necessary in order to portray the nuances and details of the witnesses' testimony and the rulings of the trial judge. Again, there is no indication that Mr. Creighton was prevented from including any information in the statement of the evidence due to the State or the trial court's objection. We find that the statement of the evidence sufficiently describes the witnesses' testimonies and the trial judge's rulings upon which this appeal is based. Consequently, we conclude that the trial court did not err by denying Mr. Creighton's motion for a verbatim transcript of the evidence at the State's expense.

## Expert Testimony

Mr. Creighton next asserts that the trial court abused its discretion in "completely disregarding a highly qualified vocational expert [i.e., Mr. Forest Osborne]." However, from our review of the record, and particularly the statement of the evidence, it appears that the trial court did, in fact, consider Mr. Osborne's testimony. The statement of the evidence contains a detailed description of both Mr. Osborne's direct and cross examination testimony. Consequently, Mr. Osborne's testimony was not disregarded as Mr. Creighton asserts. Concerning the weight to be given to that testimony, this decision rests with the trier of fact, who has the opportunity to observe the witnesses and to assess the witnesses' credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000). This Court accords great weight to the trial court's findings that are based on a determination of the witnesses' credibility. *Estate of Walton*, 950 S.W.2d 959. From our review of the record, no evidence has been provided indicating that the trial court disregarded Mr. Osborne's testimony. Furthermore, this Court has been provided with no basis that would allow it to disturb the weight the trial court placed on Mr. Osborne's testimony.

## Whether the Record Supports a Finding of Contempt

Mr. Creighton was found guilty of criminal contempt for willful failure to pay child support. In order to find contempt under Tennessee Code Annotated Section 29-9-102, a court must find the misbehavior, disobedience, resistance, or interference to be willful.

A defendant accused of criminal contempt is presumed to be innocent. *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966). The party seeking a finding of contempt, therefore, bears the burden of proving guilt beyond a reasonable doubt. *Id*. Necessarily, the State's burden in the instant case was to establish, beyond a reasonable doubt, that Mr. Creighton willfully disobeyed the court's order on child support. *See State ex rel. Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006), *rev'd on other grounds*; *Ahern v. Ahern*, 15 S.W.3d at 79 (Tenn. 2000). In *Writesman v. Writesman*, No. M1999-00726-COA-R3-CV, 2000 WL 1367965 (Tenn. Ct. App. Sept. 22, 2000), this Court said:

> In the trial of a criminal contempt case, the defendant is presumed to be innocent until he is found guilty beyond a reasonable doubt. But once the defendant is found guilty and the case is appealed, he is burdened with the presumption of guilt, and in order to obtain a reversal, he must overturn this presumption by showing that the evidence preponderates in favor of his innocence.

*Id*. at *5 (citing *Robinson v. Air Hydraulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964)) (citations omitted). The Tennessee Court of Criminal Appeals has stated the standard of review as follows:

> When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the proof adduced at the trial is sufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt. T.R.A.P. 13(e). We do not re-weigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom.

*State v. Creasy*, 885 S.W.2d 829, 831 (Tenn. Crim. App. 1994) (citations omitted).

With the foregoing in mind, we must determine whether the evidence supports the court's finding that Mr. Creighton's failure to pay child support was willful. According to the statement of the evidence, the trial court relied upon the testimony of Donnie Creighton

-17-

in determining that Mr. Creighton's failure to pay was willful.  In relevant part, Donnie Creighton testified that she had seen Mr. Creighton working at his tree trimming business during 2009. In addition, Donnie Creighton testified that she had given Mr. Creighton approximately $20,000 in 2009 to assist with his financial needs.  Despite receiving this assistance in addition to his normal income from his business, there is no indication that Mr. Creighton made any effort to pay any portion of his mounting child support arrearage during the relevant period, nor is there any evidence as to why Mr. Creighton failed to comply with his obligation to provide health insurance for his children.  Instead, Ms. Creighton testified that, in 2010, when his child support arrearage was in excess of $23,000, Mr. Creighton chose to pay his adult son $20 to $30 per day to work for him, even on days when the adult son did not come to work.

Concerning Mr. Creighton's alleged mental condition(s), the statement of the evidence indicates that Mr. Osborne testified that he is neither a psychologist nor psychiatrist; moreover, Mr. Osborne does not have a degree in the field of mental health, guidance, or counseling.  Furthermore, Mr. Osborne admitted that he cannot diagnose his clients, but rather relies upon the diagnosis of medical experts.  Based upon these admissions, it is difficult to find credence in Mr. Osborne's opinion that Mr. Creighton suffers from anxiety, mood, and attention deficit disorders so severe that he cannot hold a job.  From the totality of the evidence, we cannot conclude that the trial court erred in finding that there was no support in the record for Mr. Creighton's argument that he was unable to work. From the record, we conclude that, despite having some income and resources, Mr. Creighton chose not to pay his ordered child support.  There is no evidence in the record to indicate that Mr. Creighton's decision to ignore his obligation was anything but willful.

For the foregoing reasons, we affirm the order of the trial court.  It appearing that the Appellant is indigent, the costs of this appeal are taxed to the State.


_____
J. STEVEN STAFFORD, JUDGE