ELIA, J., Dissenting
The majority reverses and remands to allow defendant John Alves Santos to request a hearing as to his ability to pay the court operations assessment ( Pen. Code, § 1465.8, subd. (a)(1) ) and the court facilities assessment ( Gov. Code, § 70373 ) under People v. Dueñas (2019) 30 Cal.App.5th 1157, 242 Cal.Rptr.3d 268 ( Dueñas ). I believe that Dueñas was wrongly decided.[1] Therefore, I respectfully dissent.
*492 A. The Dueñas Decision
In Dueñas , Division 7 of the Second Appellate District held that due process requires the trial court (1) to conduct a hearing to ascertain a defendant's ability to pay before it imposes a court operations assessment or a court facilities assessment and (2) to stay execution of any restitution fine ( Pen. Code, § 1202.4 ) unless and until it holds an ability-to-pay hearing and concludes that the defendant has the ability to pay the restitution fine. Because defendant challenges only the imposition of the court operations and court facilities assessments, I confine my discussion to those fees.[2]
Court facilities assessments ( Gov. Code, § 70373 ) and court operations assessments ( Pen. Code, § 1465.8, subd. (a)(1) ) are statutorily required to be *936 imposed on every criminal conviction (except for parking offenses) without reference to the defendant's ability to pay. ( Dueñas, supra , 30 Cal.App.5th at p. 1164, 242 Cal.Rptr.3d 268.) The purpose of each assessment is to generate court funding. ( Gov. Code, § 70373, subd. (a)(1) ["To ensure and maintain adequate funding for court facilities, an assessment shall be imposed on every conviction for a criminal offense ..."]; Pen. Code, § 1465.8, subd. (a)(1) ["To assist in funding court operations, an assessment of forty dollars ($40) shall be imposed on every conviction for a criminal offense ..."].) The assessments are enforceable as civil judgments.
The Dueñas court noted that " '[c]riminal justice debt and associated collection practices can damage credit, interfere with a defendant's commitments, such as child support obligations, restrict employment opportunities and otherwise impede reentry and rehabilitation.' " ( Dueñas, supra , 30 Cal.App.5th at p. 1168, 242 Cal.Rptr.3d 268.) In view of "[t]hese additional, potentially devastating consequences suffered only by indigent persons," Dueñas concluded that Government Code section 70373 and Penal Code section 1465.8, subdivision (a)(1) effectively impose "additional punishment for a criminal conviction for those unable to pay." ( Dueñas, supra , at p. 1168, 242 Cal.Rptr.3d 268.) Based on that conclusion, the court reasoned that imposing these assessments without a determination that the defendant has the ability to pay them is "fundamentally unfair" and "violates due process under both the United States Constitution and the California Constitution. ( U.S. Const. 14th Amend.; Cal. Const., art. I, § 7.)" ( Ibid. , fn. omitted.)
B. Dueñas Was Wrongly Decided
For its view that the imposition of additional punishment on the indigent solely on the basis of their poverty violates due process, *493 the Dueñas court relied on Griffin v. Illinois (1956) 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 and its progeny. At issue in Griffin was an Illinois law requiring all criminal defendants not sentenced to death to pay for a trial transcript in order to appeal. A plurality of the United States Supreme Court held the state law unconstitutional, relying on both the Due Process and Equal Protection Clauses ( id. at p. 18, 76 S.Ct. 585 ), which the Court explained require "equal justice." ( Id. at p. 19, 76 S.Ct. 585 ["There can be no equal justice where the kind of trial a man gets depends on the amount of money he has. Destitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts"].) Justice Frankfurter, concurring in the judgment in Griffin , relied on equal protection principles. ( Id. , at p. 23, 76 S.Ct. 585 (conc. opn. of Frankfurter, J.).) The Supreme Court subsequently described Griffin and other cases invalidating "state-imposed financial barriers to the adjudication of a criminal defendant's appeal" as "stand[ing] for the proposition that a State cannot arbitrarily cut off appeal rights for indigents while leaving open *937 avenues of appeal for more affluent persons." ( Ross v. Moffitt (1974) 417 U.S. 600, 607, 94 S.Ct. 2437, 41 L.Ed.2d 341.)
That "principle has not been confined to cases in which imprisonment is at stake." ( M.L.B. v. S.L.J. (1996) 519 U.S. 102, 111, 117 S.Ct. 555, 136 L.Ed.2d 473 ( M.L.B. ).) Mayer v. Chicago (1971) 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 ( Mayer ) involved an indigent defendant convicted on non-felony charges and subjected to a fine, not imprisonment. The Mayer Court rejected the argument that Griffin was distinguishable because it involved a defendant "sentenced to some term of confinement," explaining that Griffin set forth "a flat prohibition against pricing indigent defendants out of as effective an appeal as would be available to others able to pay their own way." ( Id. at pp. 196-197, 92 S.Ct. 410.) The Court explained that "[t]he invidiousness of the discrimination that exists when criminal procedures are made available only to those who can pay is not erased by any differences in the sentences that may be imposed." ( Id. at p. 197, 92 S.Ct. 410.)
In M.L.B. , the Supreme Court extended Griffin to an appeal from an order terminating parental rights. The M.L.B. Court characterized Griffin and Mayer as "decisions concerning access to judicial processes" involving "[t]he equal protection concern [raised by] ... fencing out would-be appellants based solely on their inability to pay core costs" and "[t]he due process concern ... [of] the essential fairness of the state-ordered proceedings anterior to adverse state action." ( M.L.B. , supra , 519 U.S. at p. 120, 117 S.Ct. 555.) The Court reaffirmed "the general rule ... that fee requirements ordinarily are examined only for rationality," and noted that "[t]he State's need for revenue to offset costs, in the mine run of cases, satisfies the rationality requirement [citation] ...." ( Id. at p. 123, 117 S.Ct. 555.) But the Court concluded that its "cases solidly establish two exceptions to that general rule. The basic right to participate in political processes as voters and candidates cannot be limited to those who can pay for a license. Nor may access to judicial processes in cases criminal or 'quasi criminal in nature, [citation] turn on ability to pay." ( Id. at p. 124, 117 S.Ct. 555.)
The foregoing cases establish that principles of due process and equal protection bar states from conditioning access to the courts on ability to pay, thereby effectively denying such access to the indigent. Dueñas did not involve fines or fees required to be paid in order to access judicial processes. Nor does a convicted person's inability *494 to pay a court operations assessment or a court facilities assessment in any way impact that person's ability to access the courts.
Dueñas also relied on a line of cases applying Griffin to strike down as unconstitutional state laws allowing the incarceration of indigent convicted defendants solely because of their inability to pay a fine. (See *938 Williams v. Illinois (1970) 399 U.S. 235, 244, 90 S.Ct. 2018, 26 L.Ed.2d 586 [relying on Griffin and holding that state scheme permitting indigent defendants to be incarcerated beyond the statutory maximum term for their offense because of nonpayment of a fine violated the Equal Protection Clause]; Tate v. Short (1971) 401 U.S. 395, 399, 91 S.Ct. 668, 28 L.Ed.2d 130 [Equal Protection Clause precludes a state from converting a fine imposed under a fine-only statute into a jail term solely because the defendant is indigent and cannot immediately pay the fine in full]; Bearden v. Georgia (1983) 461 U.S. 660, 665, 672, 103 S.Ct. 2064, 76 L.Ed.2d 221 [revocation of defendant's probation for failure to pay a fine or restitution, "absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate," "would be contrary to the fundamental fairness required by the Fourteenth Amendment"]; In re Antazo (1970) 3 Cal.3d 100, 104, 89 Cal.Rptr. 255, 473 P.2d 999 [holding that the practice of imprisoning indigent convicted defendants for nonpayment of fines constituted "an invidious clause of the Fourteenth Amendment"].) Significantly, failure to pay the court operations and court facilities assessments does not result in jail time, but in a civil judgment.[3] Therefore, unlike the laws at issue in Williams, Tate , Bearden , and Antazo , the statutes at issue here and in Dueñas deprive no one of their fundamental right to liberty based on their indigence.
In sum, "the 'fundamental fairness' principles of due process and equal protection originating in Griffin have been applied [by the United States Supreme Court] when either incarceration or access to the courts, or both, is at stake." ( Mendoza v. Garrett (D. Or. 2018) 358 F.Supp.3d 1145, 1171 ( Mendoza ); see Fowler v. Benson (6th Cir. 2019) 924 F.3d 247, 260-261 [finding Griffin and its progeny inapplicable to constitutional challenge to state scheme permitting suspension of an indigent person's driver's license for unpaid court debt, reasoning that Griffin applies only where "fundamental liberty interests" are implicated].) Dueñas did not involve the right to access the courts, the defendant's liberty interests, or any other fundamental right. (See People v. Gutierrez (2019) 35 Cal.App.5th 1027, 1039, 247 Cal.Rptr.3d 850, conc. opn. of Benke, J. ["the imposition of the two assessments and one restitution fine on the defendant in Dueñas is [not] an issue of access to our courts or justice system, as was the case in Griffin and similar authorities" and "the fines or fees imposed on the defendant in Dueñas [did not]
*939 satisf[y] the traditional due process definition of a taking of life, liberty or property"].) The same is true of the case at bar. Accordingly, Dueñas represents a significant extension of Griffin 's principles.
*495 In my view, that extension was unwarranted. With respect to the court facilities and court operations assessments at issue here, Dueñas expressed concern about the "potentially devastating consequences" associated with nonpayment of an outstanding debt, including poor credit, inability to pay child support, disruption of employment by aggressive collection tactics, and financial insecurity. ( Dueñas, supra , 30 Cal.App.5th at p. 1168, 242 Cal.Rptr.3d 268.) But such collateral consequences are not "punishment," in the traditional sense of the word.[4] Instead, they are illustrations of the disproportionate burden fines can have on the poor.
The United States Supreme Court "has not held that fines must be structured to reflect each person's ability to pay in order to avoid disproportionate burdens," noting instead that the consideration of "the defendant's ability to pay" generally is "guided by sound judicial discretion rather than by constitutional mandate." ( San Antonio Independent School Dist. v. Rodriguez (1973) 411 U.S. 1, 22, 93 S.Ct. 1278, 36 L.Ed.2d 16 [applying the Equal Protection Clause].) And, in M.L.B. , the Court indicated that the Griffin through Bearden line of cases applies only to "[s]anctions ... [that] are not merely disproportionate in impact[, but r]ather, ... are wholly contingent on one's ability to pay, and thus 'visi[t] different consequences on two categories of persons,' [citation]; they apply to all indigents and do not reach anyone outside that class." ( M.L.B., supra , 519 U.S. at pp. 126-127, 117 S.Ct. 555.) The assessments at issue in Dueñas and here, and even the associated collateral consequences noted by the court in Dueñas , are of the sort that reach the indigent and non-indigent alike, and have varying impact based on wealth. As such, the Griffin through Bearden line of cases does not govern.
Rather, I believe that any due process challenge to the court facilities and court operations assessments is subject to rational basis review. I express no opinion as to whether the statutory scheme imposing assessments regardless of ability to pay has a rational basis, given that issue has not been explored in the briefing in this case or in Dueñas itself.[5]
*940 Dueñas makes a compelling argument that the imposition of the court operations and court facilities assessments without consideration of a defendant's ability to *496 pay is bad policy. But that is an issue best left to the Legislature.
For the foregoing reasons, I would affirm the judgment.

The Attorney General "does not take issue with the Dueñas opinion insofar as it holds the imposition of assessments for court operations and court facilities may not be imposed where a defendant demonstrates the inability to pay ...." To the extent that the Attorney General is conceding that Dueñas was correctly decided as to those assessments, we are not bound to accept that concession and must not do so if we conclude that it is based on an erroneous understanding of the law. (Desny v. Wilder (1956) 46 Cal.2d 715, 729, 299 P.2d 257.) For the reasons set forth in this dissent, I would decline to accept the Attorney General's apparent concession.

It is worth noting, however, that Dueñas 's conclusion that the restitution fine imposed under Penal Code section 1202.4 "punishes indigent defendants in a way that it does not punish wealthy defendants" apparently is limited to cases in which probation is granted. (Dueñas, supra , 30 Cal.App.5th at p. 1170, 242 Cal.Rptr.3d 268.) In that circumstance, payment of the restitution fine must be made a condition of probation. (Pen. Code, § 1202.4, subd. (m).) Dueñas reasoned that those who "successfully fulfill[ ] the conditions of probation for the entire period of probation [generally have] an absolute statutory right to have the charges against [them] dismissed. (Pen. Code, § 1203.4, subd. (a)(1).)" (Dueñas, supra , at p. 1170, 242 Cal.Rptr.3d 268.) Indigent probationers, who cannot pay the restitution fine and thus cannot fulfill the conditions of their probation, are denied that right solely by reason of their poverty, Dueñas reasons. (Id. at pp. 1170-1171, 242 Cal.Rptr.3d 268.)

In Dueñas , the trial court told the defendant that she could "save money and convert [a] $300 [fine] to 9 days of county jail," and her counsel said, " 'Yes. She doesn't have the ability to pay.' " (Dueñas, supra , 30 Cal.App.5th at p. 1162, 242 Cal.Rptr.3d 268.) However, the fact that Dueñas apparently was deprived of her liberty for inability to pay was not the basis for the court's decision, nor was it mandated by the challenged statutes. Defendant in this case does not claim he was incarcerated due to his claimed inability to pay the assessments.

Our Supreme Court recently noted that " '[a]s a legal term of art, "punishment" has always meant a "fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court , for some crime or offense committed by him." ' [Citation.]" (People v. Ruiz (2018) 4 Cal.5th 1100, 1107, 232 Cal.Rptr.3d 714, 417 P.3d 191, italics added.)

Dueñas might be read as concluding that the statutes at issue lack a rational basis; the court stated that "[i]mposing unpayable fines on indigent defendants is not only unfair, it serves no rational purpose, fails to further the legislative intent, and may be counterproductive." (Dueñas, supra , 30 Cal.App.5th at p. 1167, 242 Cal.Rptr.3d 268.) But that conclusory statement does not account for the fact that, under rational basis review, " '[a] classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citation], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citations]." (Johnson v. Department of Justice (2015) 60 Cal.4th 871, 887, 183 Cal.Rptr.3d 96, 341 P.3d 1075.) I question whether the imposition of fees on all convicted defendants, regardless of ability to pay (or, relatedly, likelihood of collection), is irrational or merely overinclusive. (See Mendoza, supra , 358 F.Supp.3d at p. 1175 ["that the statute may be overinclusive by its enforcement as to indigent traffic debtors with no means of paying the fine, does not, under rational basis review, render it unconstitutional"].) But that is a question for another day.